**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CHASE STANDAGE,

      Plaintiff,

  v.

KENNETH J. BRAITHWAITE, *et al.*,

      Defendants.

Civ. No. ELH-20-2830

**DEFENDANTS' MOTION TO DISMISS AND
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

The Superintendent of the United States Naval Academy (USNA) has the statutory authority to determine whether "the conduct of a midshipman is unsatisfactory" in discharge proceedings. 10 U.S.C. § 8462(a)(1). If the Secretary of the Navy believes, on the basis of the Superintendent's report and the midshipman's statement, that the determination of the Superintendent is "reasonable and well founded," he may discharge the midshipman from the Naval Academy and from the naval service. *Id.* § 8462(b). The Superintendent may initiate similar proceedings if the continued presence of any midshipman at the Academy is contrary to the best interest of the service. *Id.* § 8461. Midshipmen may be placed on involuntary leave without pay pending separation from the Academy. *Id.* § 702(b).

Plaintiff challenges his pending discharge proceedings from the USNA on the ground that his First Amendment rights were violated by the application of the USNA political activities regulation to his conduct. At the time of filing of this action on September 30, 2020, Midshipman First Class Chase Standage had been orally notified that he would be processed for separation; however, processing was halted before formal written notifications, opportunity for rebuttal,

discharge, or appeal to the Board for Correction of Naval Records (BCNR) could occur. (*See* ECF No. 5.)

This Court lacks subject matter jurisdiction to consider Plaintiff's claims for several reasons. First, Plaintiff's claims are not yet ripe for consideration before a court. Second, Plaintiff has not yet exhausted *any* avenues of administrative relief, including his opportunity to hear the Superintendent's determination in this case, respond to a notification of discharge if required, allow the Assistant Secretary of the Navy, Manpower & Reserve Affairs (ASN M&RA)[1] to make a final decision, and appeal to the BCNR. Moreover, even if Plaintiff had exhausted his administrative remedies, the Court also lacks jurisdiction because Plaintiff's claims raise a nonjusticiable military controversy and because Plaintiff fails to articulate claims that would waive the Federal Government's sovereign immunity. Similarly, the Court lacks authority to grant Plaintiff's requested relief and declare that he graduate, participate in the Voluntary Graduate Education Program (VGEP), or receive a commission. Consequently, Plaintiff's Complaint must be dismissed.

Even if this Court had jurisdiction over Plaintiff's claims, Plaintiff cannot clearly establish even one of the four elements required to permit this Court to grant preliminary relief. The burden is even heavier in cases of military discharge in light of the significant deference courts must give to military decision-making. Plaintiff comes nowhere close to making this elevated showing. Therefore, if this Court does exercise jurisdiction here, it should nonetheless deny Plaintiff's motion for preliminary injunction.

---

[1] The Secretary of the Navy delegated his authority under 10 U.S.C. § 8462 to the ASN (M&RA) via SECNAVINST 1531.4A, **Ex. A**, and SECNAV Memo 1 Nov 2007, **Ex. B**. Under SECNAVINST 1531.4A, the ultimate decision for disenrollment of a midshipman for misconduct resides with the ASN (M&RA).

## BACKGROUND

During June 2020, Plaintiff, under the moniker "Cheese Sandwich," posted a number of tweets on Twitter that contained crude commentary on a number of social issues. One such tweet discusses Breonna Taylor, who died in a no-knock police raid of her apartment on March 13, 2020. In response to a tweet asking why it was taking so long for Breonna Taylor to receive justice, Plaintiff tweeted: "Her justice was received on March 13, 2020." **Ex. C**. The Naval Academy's investigation also found six tweets that advocate the use of lethal force against civilians such as an airstrike within Seattle, Washington. **Ex. D**.

On August 6, 2020, the Deputy Commandant found Plaintiff violated Commandant of Midshipmen Notice (COMDTMIDNNOTE) 5720 on Political Activities of Midshipmen, **Ex. E**, and Uniform Code of Military Justice (UCMJ) Article 133 Conduct Unbecoming an Officer and a Gentleman, 10 U.S.C. § 133.[2] **Ex. F**. The Chief of Staff considered Plaintiff's request for reconsideration on September 2, 2020. **Ex. G**. The Chief of Staff determined that the preponderance of evidence supported the findings of misconduct. The reconsideration specifically rejected Plaintiff's First Amendment claim:

> I do not find that your First Amendment rights were violated. Midshipman are encouraged to be engaged citizens and are permitted to express personal political opinions, as long as they do so in a professional and respectful manner. The issue with your social media comments was in the manner in which you expressed your opinions, not necessarily with your opinions themselves.

*Id.*

In compliance with the separation procedures in Commandant of Midshipmen Instruction

---

[2] The military has jurisdiction over offenses based on the status of the accused as a member of the Armed Services. *Solorio v. United States*, 483 U.S. 435, 450-51 (1987). Although midshipmen are not commissioned officers, Article 133, UCMJ, expressly applies to midshipmen. 10 U.S.C. § 933.

(COMDTMIDNINST) 1610.2K, Administrative Performance and Conduct System, **Ex. H**, the Chief of Staff conducted a hearing with Plaintiff on September 10, 2020, **Ex. I**. The Chief of Staff considered Plaintiff's case file and overall record, written and in-person character witnesses, and Plaintiff's attorney's submissions. *Id.* The Chief of Staff recommended to the Superintendent that Plaintiff be disenrolled from the Naval Academy and wrote: "Midshipman First Class Standage has lost my confidence in his ability to make sound decisions and to uphold the core values expected from an officer in the Navy." *Id.*

Following an emergency telephone conference on the day this action was filed, the Court ordered the suspension Plaintiff's disenrollment process pending the outcome of his Motion for Preliminary Injunction. (ECF No. 5.) If the Superintendent does submit a report recommending discharge under 10 U.S.C. § 8462(a), Plaintiff will be given an opportunity to examine the report and submit a written statement before Secretarial action. 10 U.S.C. § 8462(b).

## LEGAL STANDARDS

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction raises the question of whether the court has the authority to hear and decide the case. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008). When a defendant challenges subject matter jurisdiction, the court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991)). In addition, the court may properly grant a motion to dismiss for lack of

subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citation omitted).

## II.    Preliminary Injunction

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). A party seeking a preliminary injunction bears the burden of establishing that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Each of these four factors must be satisfied to obtain preliminary injunctive relief. *Henderson v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018). Consequently, if the party seeking the injunction fails to make a clear showing of any one of the four factors, the Court need not consider the remaining factors and must deny the preliminary injunction. *See id.* at 438-39.

When a case involves "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," the Court gives "great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Roe v. United States DOD*, 947 F.3d 207, 219 (4th Cir. 2020) (quoting *Winter*, 555 U.S. at 24).

## **ARGUMENT**

The Court must dismiss Plaintiff's Complaint for lack of subject matter jurisdiction because Defendants are entitled to sovereign immunity, Plaintiff's claims are premature, and Plaintiff's claims raise a nonjusticiable military controversy. Each of these grounds is

independently sufficient to require jurisdictional dismissal. Even if the Court did possess jurisdiction over Plaintiff's claims, Plaintiff cannot clearly establish any of the four elements required to permit the Court to grant preliminary relief and, therefore, his motion for preliminary injunction must be denied. If granted, such injunctive relief would result in a chilling effect on command decisions if Sailors can preempt processing of separation actions by skipping the entire chain of command and administrative processes, enacted through authority ultimately vested by the legislature, and severely constrain the Secretary of the Navy's responsibility to man, train, and equip the Navy and the Marine Corps through accessions control, including from the USNA. *See* 10 U.S.C. § 8013(b). Allowing midshipmen to "bypass[. . .] the hierarchy of the armed services seeking injunctions to overturn personnel decisions of their superiors in civilian courts could substantially alter and interfere with the 'peculiar and special relationship of the soldier to his superiors.'" *Dibble v. Fenimore*, 339 F.3d 120, 128 (2d Cir. 2003) (quoting *United States v. Brown*, 348 U.S. 110, 112 (1954)).

I.      **The Court lacks subject matter jurisdiction to consider Plaintiff's claims.**

        A.      **Defendants enjoy sovereign immunity to Plaintiff's claims.**

        It is axiomatic that the United States and its agencies and officers are immune from suit unless they have consented to suit. *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Such consent can be effected only by an express and unequivocal waiver of sovereign immunity by Congress, and cannot be implied. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Mitchell*, 445 U.S. at 538; *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 93-94 (3d Cir. 1995); *see also Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) ("Sovereign immunity can be waived only by the sovereign: the circumstances of its waiver must be scrupulously observed and not expanded by the courts.");

*Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 140 (2d Cir. 1999) ("[T]he federal government's sovereign immunity may only be waived by Congressional enactment.").

A waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192; *see United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992); *Beneficial Consumer Disc.*, 47 F.3d at 94. "Sovereign immunity is jurisdictional in nature[;] . . . the 'terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). An action is presumed to lie outside of a district court's limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Therefore, the plaintiff bears the burden of establishing a sovereign immunity waiver for a claim against the United States, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995), and must establish a waiver for each individual claim and each form of relief. *See generally* 14 Fed. Prac. & Proc. § 3654 (3d ed. 1998). Plaintiff's claims must be dismissed because Plaintiff has failed to identify an express waiver of sovereign immunity as to any of his claims and any of the relief he seeks.

First, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, "plainly does not operate as an express waiver of sovereign immunity . . . because it neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief." *Worsham v. U.S. Dep't of the Treasury*, Civ. No.: ELH-12-2635, 2013 WL 5274358, at *7 (D. Md. Sept. 17, 2013) (quoting *Muirhead v. Meacham*, 427 F.3d 14, 17 n.1 (1st Cir. 2005)) (quotation marks omitted); *see also Balistrieri v. United States*, 303 F.2d 617, 619 (7th

Cir. 1962) ("It is axiomatic that a suit cannot be maintained against the United States without its consent. The passage of the Declaratory Judgment Act did not give such consent." (citations omitted)); *Johnson v. Sessions*, Civ. No. RDB-15-3317, 2017 WL 1207537, at *6 (D. Md. Apr. 3, 2017) (slip copy) ("[I]t is apparent that the United States has not waived sovereign immunity as to the plaintiffs' declaratory judgment claims."). Therefore, Plaintiff's claims under the Declaratory Judgment Act and for declaratory relief are barred by sovereign immunity and must be dismissed.

Similarly, the First and Fifth Amendments do not operate as waivers of sovereign immunity. *Hopes v. Roche*, Civ. No. RDB-04-2963, 2005 WL 1812820, at *7 (D. Md. Aug. 2, 2005) (quoting *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982)) ("The Constitution does not waive the Government's sovereign immunity in a suit for damages.") Rather, a waiver of sovereign immunity, "if it exists at all, must be found in [a] statute giving rise to the cause of action." *Id.* (quoting *Garcia*, 666 F.2d at 715-18); *Lim v. United States*, Civ. No. DKC-10-2574, 2011 WL 2650889, at *8 (D. Md. July 5, 2011) ("Federal courts have no jurisdiction over claims against the United States asserting general violations of the Constitution not authorized by specific statute."). Congress has not waived the sovereign immunity of federal agencies for alleged violations of the Free Speech Clause of the First Amendment or the Due Process Clause of the Fifth Amendment. *See Meyer*, 510 U.S. 484-86; *see also Hopes*, 2005 WL 1812820, at *7; *cf. Weiss v. Price*, Civ. No. ELH-17-1127, 2018 WL 1156770, at *4 (D. Md. Mar. 2018), *aff'd sub nom*, *Weiss v. Azar*, Civ. No. ELH-17-1127, 2018 WL 6478025 (D. Md. Dec. 7, 2018), *appeal dismissed*, No. 19-1147, 2019 WL 8301806 (4th Cir. May 8, 2019) ("In the absence of any Congressional manifestation of consent to be sued for alleged constitutional violations, subject matter jurisdiction is lacking for [Plaintiff's] Fifth Amendment takings claim."); *Ronquest v. Newton*, Civ. No. 5:15-CT-3179-FL, 2017 WL 177624, at *2 (E.D.N.C. Jan. 17, 2017) (citing

*Loeffler v. Frank*, 486 U.S. 549 (1988); *Global Mail Ltd. v. U.S. Postal Svc.*, 142 F.3d 208, 210 (4th Cir. 1998)) (dismissing claim for violation of the First Amendment against a federal agency on the grounds that the "federal government and its agencies are not subject to suit absent a waiver of sovereign immunity"). Therefore, Plaintiff's First Amendment free speech claim and Fifth Amendment due process claim are barred by the government's immunity to suit.

Lastly, the federal question statute, 28 U.S.C. § 1331, unequivocally "is not a general waiver of sovereign immunity." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) (citation omitted). Rather, it "merely establishes a subject matter that is within the competence of federal courts to entertain." *Id.* (citation omitted); *see also Radin v. United States*, 699 F.2d 681, 685 n.9 (4th Cir. 1983) (noting that 28 U.S.C. § 1331 is "merely a jurisdictional grant that in no way affects the sovereign immunity of the United States"); *Humphreys v. United States*, 62 F.3d 667 (5th Cir. 1995) (holding that 28 U.S.C. § 1331, by granting district courts jurisdiction over constitutional claims, does not thereby waive sovereign immunity).

Accordingly, because Plaintiff cannot identify a waiver of the government's sovereign immunity to his claims, this action must be dismissed for lack of subject matter jurisdiction.[3] *Meyer*, 510 U.S. at 475.

**B.      Plaintiff's claims are premature.**

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (quoting U.S. Const. art. III, § 2). A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties. *Charter Fed. Sav. Bank v. Office of*

---

[3] Although the Administrative Procedure Act (APA) waives the government's sovereign immunity for "final agency action," 5 U.S.C. § 702, Plaintiff has not pleaded a cause of action under the APA. Moreover, even if he did, he has not alleged and cannot show any final agency action.

*Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). "To determine whether the case is ripe, we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration. A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319 (citations omitted).

Discharge from the Naval Academy and naval service only becomes final upon Secretarial action. *See* 10 U.S.C. § 8462(b). At the time of pleadings, the parties and the Court can only speculate what action the ASN (M&RA) might take on behalf of the Secretary of the Navy. Therefore, because the issues in this case are not purely legal but are, instead, heavily fact dependent, and the ultimate action is not final but is dependent on future uncertainties, this case is precisely the type unfit for judicial decision. *See Miller*, 462 F.3d at 319; *Charter Fed. Sav. Bank*, 976 F.2d at 208.

Even if Plaintiff's claims were ripe, this Court should dismiss them for Plaintiff's failure to exhaust available intraservice corrective measures. "[A] court should not review internal military affairs 'in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures.'" *Williams v. Wilson*, 762 F.2d 327, 359 (4th Cir. 1985) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)); *see also Roe*, 947 F.3d at 217-18 (holding in 2020 that *Mindes* continues to be the law of the Fourth Circuit). Failure to exhaust all available intraservice remedies may render any federal court claim (and any request for immediate injunctive relief sought along with that claim) "a nonjusticiable military controversy," requiring a district court to dismiss the claim "without prejudice as premature." *Williams*, 762 F.2d at 359-60; *see also Guerra v. Scruggs*, 942 F.2d 270, 276-77 (4th Cir. 1991).

Plaintiff seeks to not only bypass the well-established intraservice remedies available to him, but to preclude the ASN (M&RA) from making any decision on his case at all by obtaining premature review in federal court. The Superintendent and ASN (M&RA) have authority to consider the very arguments that Plaintiff presents here, and thereafter make a decision; moreover, the BCNR has the authority to review Plaintiff's arguments upon timely petition and alter any discharge, order back pay and allowances, and recommend reinstatement into the Navy. *See* 10 U.S.C. § 1552. Allowing the administrative process to proceed, up to and including possible BCNR review, "might completely obviate the need for judicial review" or, at the very least, provide the Court with "a definitive interpretation of the [applicable] regulation and an explication of the relevant facts from the highest administrative body in the [service's] own appellate system." *Navas v. Vales*, 752 F.2d 765, 770-71 (1st Cir. 1985) (quoting *Hodges v. Callaway*, 499 F.2d 417, 422 (5th Cir. 1974)). Further, under a "consistent and unambiguous line of cases," the Fourth Circuit has "reject[ed] the contention that constitutional claims should be exempt from exhaustion requirements." *Nationsbank Corp. v. Herman*, 174 F.3d 424, 429 (4th Cir. 1999). Plaintiff is entitled to present all of his arguments to the ASN (M&RA) and BCNR. There is no reason for this Court to weigh in on the proper application of those regulations to Plaintiff before the Navy itself has had an opportunity to make a decision in this case. Indeed, Plaintiff could ultimately prevail in the administrative proceedings. In any event, this action is premature and must be dismissed as such.

      C.      **Even if Plaintiff had properly exhausted his available intraservice remedies, his claims raise a nonjusticiable military controversy.**

Even if Plaintiff's claims satisfied the threshold requirements of the *Williams/Mindes* analysis, the Court would be required to balance four factors to determine if it could properly consider the case:

(1)  the nature and strength of the plaintiff's challenge to the military
     determination;
(2)  the potential injury to the plaintiff if review is refused;
(3)  the type and degree of anticipated interference with the military
     function; and
(4)  the extent to which the exercise of military expertise or
     discretion is involved.

*Williams*, 762 F.2d at 359 (quoting *Mindes*, 453 F.2d at 201-02). In this case, none of these factors weigh in favor of this Court taking jurisdiction over Plaintiff's claims. The question is ultimately whether his conduct is unsatisfactory considering his violations of Article 133, UCMJ, and the USNA's political activities instruction.

First, Plaintiff's First Amendment challenge has no likelihood of success. As fully discussed below, Plaintiff's free speech claim fails under the Supreme Court guidance in *Parker v. Levy*, 417 U.S. 733 (1974) and the Article 133, UCMJ, private speech test from *United States v. Hartwig*, 39 M.J. 125, 128 (C.A.A.F. 1994).

The due process claim in the complaint also fails. The decision that the conduct of a midshipman is unsatisfactory belongs to the Superintendent, and the decision to discharge belongs to the Secretary. 10 U.S.C. § 8462(a)(1). Plaintiff's assertion that the Superintendent improperly influenced lower-level proceedings through command climate fails to acknowledge that the decisions in section 8462(a)(1) ultimately belong to the Superintendent and a higher ranking military authority.

Second, the potential injury to the Plaintiff in this case is limited. As fully discussed below, Plaintiff cannot successfully demonstrate a First Amendment harm. Plaintiff will have ample recourse for his military status, including the opportunity to submit a statement for a decision by the ASN M&RA, as well the ability to appeal to the BCNR. Significantly, Plaintiff has no guarantee or right to either graduation from the Academy or commission as an officer.

Third, the anticipated interference with military function is significant. This case—if heard at this premature time—will open the door to untimely complaints by future midshipmen and military personnel who seek to circumvent the "hierarchy of command" that is critical to the United States' ability to maintain a ready and lethal fighting force. Allowing midshipmen to "bypass[. . .] the hierarchy of the armed services seeking injunctions to overturn personnel decisions of their superiors in civilian courts could substantially alter and interfere with the 'peculiar and special relationship of the soldier to his superiors.'" *Dibble*, 339 F.3d at 128 (quoting *Brown*, 348 U.S. at 112).

Fourth, the determination of fitness for a midshipmen is an inherently military decision. Congress authorized the Superintendent to initiate disenrollment proceedings "whenever the Superintendent determines that the conduct of a midshipman is unsatisfactory." 10 U.S.C. § 8462(a)(1). Congress even limited the Secretary's review. The Secretary reviews only whether, on the basis of the Superintendent's report and midshipman's statement, the determination is "reasonable and well founded." *Id.* § 8462(b). Because Congress limited even the Secretary's review, there is no indication that it intended a full scope of judicial review.

None of the four *Williams/Mindes* factors weigh in favor of considering Plaintiff's claims. Significantly, Plaintiff's free speech claim is particularly weak on the merits and completely intertwined with military discretion. In order for this Court to evaluate an officer's private speech under Article 133, UCMJ, the test is whether the officer's speech "poses a clear and present danger that the speech will, in dishonoring or disgracing the officer personally, seriously compromise[] the person's standing as an officer." *United States v. Hartwig*, 39 M.J. 125, 128 (C.A.A.F. 1994) (quotations omitted). Review of that fact-specific determination in Plaintiff's case is nonjusticiable.

II.     **Plaintiff cannot demonstrate entitlement to preliminary injunctive relief.**

A preliminary injunction is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Plaintiff has not met his burden to make a clear showing that he is entitled to preliminary relief. To succeed on his motion, Plaintiff must clearly demonstrate each of four elements: (1) he is "likely to suffer irreparable harm in the absence of preliminary relief"; (2) he is "likely to succeed on the merits"; (3) "that the balance of equities tips in his favor;" and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "*Winter* ma[kes] clear that *each* of these four factors must be satisfied to obtain preliminary injunctive relief." *Henderson*, 902 F.3d 439. Consequently, if Plaintiff fails to make a clear showing of any one of the four factors, the Court need not consider the remaining factors and must deny the preliminary injunction. *See id.* at 438-39. Plaintiff has not established any of these elements, let alone all four of them. Accordingly, his motion must be denied.

A.     **Plaintiff has no likelihood of success on the merits.**

1.     **Plaintiff's claims are nonjusticiable.**

Fourth Circuit precedent is clear that, in a case that cannot be heard because the court lacks subject matter jurisdiction, the plaintiff has "no likelihood of success on the merits." *Guerra*, 942 F.2d at 277. As explained above, *see supra* Part I, review is unavailable here for several reasons, including sovereign immunity, ripeness, and Plaintiff's failure to exhaust his intraservice remedies. *Id.* at 276-77; *see also Williams*, 762 F.2d at 359. Plaintiff therefore must obtain review of any potential, future separation decisions through the BCNR before coming to court. *See Williams*, 762 F.2d at 360 ("The [Army Board for Correction of Military Records (ABCMR)] is better equipped than the courts. . . . The ABCMR has far greater experience that this court in deciphering the content and effect of military regulations and should be permitted to exercise its expertise." (citing

*Navas*, 752 F.2d at 769-70)).  For this reason alone, Plaintiff cannot demonstrate that he is likely to succeed on the merits.

>    **2.      Even if Plaintiff's claims were justiciable, his constitutional claim fails.**

The Supreme Court has "long recognized that the military is, by necessity, a specialized society separate from civilian society." *Parker v. Levy*, 417 U.S. 733, 743 (1974). "Speech that is protected in the civil population may nonetheless undermine the effectiveness of response to command. If it does, it is constitutionally unprotected." *Id.* at 759 (upholding a conviction under Article 133, UCMJ, based on statements criticizing the Vietnam War).

For civilian speech, the Supreme Court has applied the concept of viewpoint discrimination to the First Amendment. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011). No court has applied the doctrine to military speech, and the military-specific holding in *Parker* prevents the application of the civilian viewpoint discrimination standard within the military. The anti-war statements at issue in *Parker* reflected a content-specific viewpoint, which formed the basis of a court-martial conviction under Article 133 ultimately upheld by the Supreme Court. *See Parker*, 417 U.S. at 736-38. As the Supreme Court looked to military cases to determine the scope of protected speech under Article 133 in *Parker*, *see id.* at 758-59, so too should this Court.

Article 133 provides: "Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct." 10 U.S.C. § 933. Conduct unbecoming under Article 133, UCMJ, is a military offense that "reflect[s] a high level of congressional concern" for officer—and future officer, *i.e.*, midshipmen and cadet— conduct. *United States v. Voorhees*, 79 M.J. 5, 16 (C.A.A.F. 2019) (citing *United States v. Haverty*, 76 M.J. 199, 205 n.10 (C.A.A.F. 2017)). "Because officer behavior is so important, 'criminal liability for [conduct unbecoming] does not depend on whether

conduct actually effects a harm upon [a] victim,' but rather on whether the officer possessed the general intent to act indecorously, dishonestly, or indecently." *Id.* (quoting *United States v. Caldwell*, 75 M.J. 276, 282 (2016)). "The gravamen of [Article 133, UCMJ] is that the officer's conduct disgraces him personally or brings dishonor to the military profession such as to affect his fitness to command . . . so as to successfully complete the military mission." *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009) (internal quotation marks omitted). Plaintiff's reliance on case law for Article 134, UCMJ, 10 U.S.C. § 934, which—unlike Article 133, applies to both officers and enlisted personnel, and requires conduct that is service-discrediting or prejudicial to good order and discipline—is thus misplaced.

"When an alleged violation of Article 133 is based on an officer's private speech, the test is whether the officer's speech poses a 'clear and present danger' that the speech will, 'in dishonoring or disgracing the officer personally, seriously compromise[] the person's standing as an officer.'" *United States v. Hartwig*, 39 M.J. 125, 128 (C.A.A.F. 1994) (quoting para. 59c(2), Part IV, Manual for Courts-Martial, United States, 1984). "That Article 133 affronts no constitutional concept has seemingly never been in doubt." *Id.* (quoting *United States v. Howe*, 37 CMR 429, 440 (C.M.A. 1967)).

While this Court may articulate and uphold the constitutional standard, it must not substitute its judgment for that of military authorities. *See Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). When evaluating whether military needs justify a particular restriction on otherwise protected conduct, "courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Id.* (citing *Chappell v. Wallace*, 462 U.S. 296, 305 (1983)). In this case, a military commander is better situated to evaluate whether comments that advocate for the use of airstrikes against civilians

dishonor or disgrace an aspiring naval aviator and compromise his standing as an officer.

Military authorities considered Plaintiff's social media statements and determined that he violated Article 133, Conduct Unbecoming.[4] Plaintiff advocated the use of lethal military force against civilians and indicated that Breonna Taylor received justice when she died in a no-knock police raid. **Exs. C and D**. As articulated by the Chief of Staff: "Midshipman First Class Standage has lost my confidence in his ability to make sound decisions and to uphold the core values expected from an officer in the Navy." **Ex. I**. Because Plaintiff's speech poses a clear and present danger that his speech will, in dishonoring or disgracing him personally, seriously compromise his standing as an officer, the Article 133 violation easily passes constitutional scrutiny. *See Hartwig*, 39 M.J. at 128. Plaintiff has absolutely no likelihood of success on the merits, and this Court must deny the preliminary injunction.

> **B.      Plaintiff cannot show irreparable harm.**

Plaintiff's motion for a preliminary injunction must be denied because he cannot make a "clear showing" of likely irreparable harm. *See Winter*, 555 U.S. at 22. Plaintiff's reliance on First Amendment harm case law is misplaced because, as shown above, there is no First Amendment violation.

In cases involving military personnel decisions, courts require the moving party to make a much stronger showing of irreparable harm than the ordinary standard for injunctive relief. *See Guerra*, 942 F.2d at 274; *see also Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985).

The Supreme Court has recognized that where federal civilian employees seek immediate

---

[4] Plaintiff also violated COMDTMIDNNOTE 5720 on Political Activities of Midshipmen. The order prohibits, *inter alia*, showing contempt for public officials, releasing sensitive information, or posting unprofessional material that is prejudicial to good order and discipline under the UCMJ. The government defends that result, but the Court need not consider it due to the plethora of legal support on the Article 133 offense.

injunctive relief from termination, the employee must make an extraordinary showing of irreparable harm beyond the traditional evidence necessary to sustain preliminary injunctive relief. *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974).

> Assuming for the purpose of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case.

*Id.*; *see also id.* at 84.

Here, Plaintiff's claims arise in the *military* personnel context, where courts have provided extraordinary deference. *See, e.g.*, *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953); *Hartikka*, 754 F.2d at 1518; *Chilcott v. Orr*, 747 F.2d 29, 33 (1st Cir. 1984) ("[M]ilitary discharge proceedings should be enjoined only in exceptional circumstances."). The Fourth Circuit has held "that *Sampson*'s higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters." *Guerra*, 942 F.2d at 274.

In *Guerra*, the Fourth Circuit applied this heightened standard to circumstances involving pending military discharge proceedings—an enlisted National Guard soldier sought immediate injunctive relief to preclude his forthcoming separation based on conclusory allegations of reputational loss and pay—and held that the soldier simply could not demonstrate the necessary irreparable harm. *Id.* at 274-75. Courts have not hesitated to reject claims of stigma or reputational injury from service members discharges. *See id.* at 274 (holding that even a "general discharge under honorable conditions is not an injury of sufficient magnitude to warrant an injunction."); *Chilcott*, 747 F.2d at 34; *McBride v. West*, 940 F. Supp. 893, 896 (E.D.N.C. 1996).

Even in the absence of this precedent, Plaintiff's injuries are simply not irreparable.

Plaintiffs can obtain review from the BCNR, which is empowered to "correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a), and may (in conjunction with the Secretary of the Navy) order Plaintiff's reinstatement and backpay. In the event that—and not before—the BCNR denies his request for relief, Plaintiff has an alternate course of recovery in either the Court of Federal Claims (which can "provide an entire remedy") under the Tucker Act, *Mitchell v. United States*, 930 F.2d 893, 896-97 (Fed. Cir. 1991)) or this Court (under the APA).

In sum, because Plaintiff cannot establish the necessary irreparable harm to justify preliminary injunctive relief, this Court should deny his motion without addressing the other *Winter* factors. *See Henderson*, 902 F.3d at 438-39.

## C.    The remaining equitable factors do not favor preliminary injunctive relief.

The remaining equitable factors—which merge when the government is a party, *Nken v. Holder*, 556 U.S. 418, 435 (2009)—also do not favor preliminary injunctive relief. The Fourth Circuit recognized the harm to the military from the entry of preliminary injunctive relief in *Guerra*, noting that the harm "is greater than it first appears." 942 F.2d at 275. This is so because "injunctions would be routinely sought in . . . discharge cases" and "[t]he result would be judicial second-guessing of a kind that courts have been reluctant to engage in." *Id.*

The same is true here. If this Court were to grant preliminary relief, any cadet or midshipman facing disenrollment could seek similar relief in the federal courts before the services could evaluate the service member's arguments for retention, issue a decision on separation, and provide review from the services' correction boards. A preliminary injunction would also entangle the Court in "professional military judgments,"—"complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," *Winter*, 555 U.S. at 24

(citations omitted)—in a way that would interfere "with the subordinate decisions of military authorities" and "frustrate[] the national security goals that the democratic branches have sought to achieve," *Thomassen v. Perry*, 80 F.3d 915, 926 (4th Cir. 1996).

The public interest also would not be served by ordering the Navy to stop processing Plaintiff's separation. *See Guerra*, 942 F.2d at 280 (holding that the public interest did not weigh in favor of immediate injunctive relief to preclude military member's discharge based on same analysis as the balancing of harms). Indeed, in the context of personnel actions, it is in the public interest to "allow[] the military, in an orderly fashion, to fully adjudicate claims on the part of its own personnel, free of unnecessary interference by the federal courts." *McBride*, 940 F. Supp. at 897. Permitting court involvement prior to the exhaustion of administrative remedies undermines the trust placed in the military to regulate its own actions and results in judicial second guessing of military actions prior to their completion.

Thus, the final two factors weigh in the government's favor, not Plaintiff's. For these reasons, Plaintiff cannot clearly establish any of the preliminary injunction factors, let alone all four of them. His motion, therefore, must be denied. *See Henderson*, 902 F.3d at 439.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint and deny Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted,

Robert K. Hur
United States Attorney


By:  /s/ Kelly M. Marzullo
      Kelly M. Marzullo (Bar No. 28036)
      Assistant United States Attorney
      36 South Charles Street, 4th Floor
      Baltimore, Maryland 21201
      (410) 209-4956 (direct)
      (443) 762-5842 (mobile)
      (410) 962-2310 (fax)
      kelly.marzullo@usdoj.gov