

**DEPARTMENT OF THE NAVY**
OFFICE OF THE COMMANDANT OF MIDSHIPMEN
UNITED STATES NAVAL ACADEMY
101 BUCHANAN ROAD
ANNAPOLIS MARYLAND 21402-5100

COMDTMIDNINST 1610.2K
CONDUCT
27 Jul 2020

## COMMANDANT OF MIDSHIPMEN INSTRUCTION 1610.2K

From:   Commandant of Midshipmen, U.S. Naval Academy

Subj:   ADMINISTRATIVE PERFORMANCE AND CONDUCT SYSTEM

Encl:   (1) Administrative Performance and Conduct System Manual

1. <u>Purpose.</u>  To update and clarify Administrative Performance and Conduct System requirements and procedures.

2. <u>Cancellation.</u>  COMDTMIDNINST 1610.2J

3. <u>Scope and Applicability.</u>  This instruction applies to all midshipmen at the U.S. Naval Academy (USNA) comprising the Brigade of Midshipmen.

4. <u>Information.</u>  Enclosure (1) is published for the information and compliance of members of the Brigade of Midshipmen and all personnel subordinate to the Commandant of·Midshipmen.  This is a complete revision and should be read in its entirety.

5. <u>Record Management</u>

    a.  Records created as a result of this instruction, regardless of format or media, must be maintained and dispositioned for the standard subject identification codes (SSIC) 1000 through 13000 series per the records disposition schedules located on the Department of the Navy/Assistant for Administration (DON/AA), Directives and Records Management Division (DRMD) portal page at https://portal.secnav.navy.mil/orgs/DUSNM/DONAA/DRM/Records-and-Information-Management/Approved%20Record%20Schedules/Forms/AllItems.aspx.

    b.  For questions concerning the management of records related to this instruction or the records disposition schedules, please contact your local records manager or the DON/AA DRMD program office.

6. <u>Review and Effective Date.</u>  The Conduct Officer is responsible for the annual review of this instruction.  This instruction will automatically expire five years after the effective date unless reissued or otherwise canceled prior to the five-year anniversary date, or an extension has been granted.

T. R. BUCHANAN

Distribution:
Non-Mids (Electronically)
Brigade (Electronically)

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**ADMINISTRATIVE**


**PERFORMANCE AND CONDUCT**


**SYSTEM MANUAL**



Ex. H

# TABLE OF CONTENTS

## ADMINISTRATIVE PERFORMANCE AND CONDUCT SYSTEM MANUAL

## CHAPTER 1 - INTRODUCTION TO THE ADMINISTRATIVE PERFORMANCE AND CONDUCT SYSTEM

| SECTION | SUBJECT | |
|---|---|---|
| 1.1 | General | 1-1 |
| 1.2 | Standards of Performance | 1-2 |
| 1.3 | Basic Principles of the Conduct System | 1-2 |
| 1.4 | Design of the Conduct System | 1-4 |
| 1.5 | Conduct Semesters Defined | 1-4 |
| 1.6 | Conduct System and Honor System Relationship | 1-5 |
| 1.7 | Conditions for Graduation | 1-5 |

## CHAPTER 2 - SPECIFIC CONDUCT OFFENSES

| SECTION | SUBJECT | |
|---|---|---|
| 2.1 | Introduction | 2-1 |
| 2.2 | Regulations, Orders, Instructions, Duty | 2-1 |
| 2.3 | Fourth Class Training Program | 2-3 |
| 2.4 | Standards of Behavior | 2-3 |
| 2.5 | Alcohol and Drugs | 2-7 |
| 2.6 | Military Appearance | 2-8 |
| 2.7 | Absences or Tardiness | 2-9 |

## CHAPTER 3 – PROCEDURES FOR REPORTING, INVESTIGATING, AND ADJUDICATING OFFENSES

| SECTION | SUBJECT | |
|---|---|---|
| 3.1 | Reporting a Conduct Offense | 3-1 |
| 3.2 | Investigating Reported Offenses | 3-1 |
| 3.3 | Adjudicative Hearings | 3-3 |
| 3.4 | Request for Reconsideration (Appeal) | 3-9 |
| 3.5 | Unsatisfactory Conduct Procedures | 3-11 |
| 3.6 | Separation Procedures | 3-12 |
| 3.7 | Miscellaneous Considerations | 3-13 |

Ex. H

**CHAPTER 4 - <u>DISCIPLINARY MEASURES: RULES AND EXPLANATIONS</u>**

<u>SECTION</u>        <u>SUBJECT</u>

4.1        Levels of Disciplinary Measures..........................................        4-1
4.2        Suspension of Awarded Sanctions....................................        4-2
4.3        Deferment of Restriction or Tours....................................        4-2
4.4        Types of Sanctions…........................................................        4-2
4.5        Other Disciplinary Measures.............................................        4-7
4.6        Conduct Probation.............................................................        4-10
4.7        Separation.........................................................................        4-11

**CHAPTER 5 - <u>DUTIES AND RESPONSIBILITIES</u>**

<u>SECTION</u>        <u>SUBJECT</u>

5.1        Introduction.......................................................................        5-1
5.2        Adjudicating Authority......................................................        5-1
5.3        Accused Midshipman.........................................................        5-1
5.4        Preliminary Investigative Officer (PIO)............................        5-2
5.5        Company/Battalion Conduct Officer..................................        5-2
5.6        Brigade Conduct Officer....................................................        5-2
5.7        Commandant's Conduct Officer.........................................        5-3
5.8        Commandant's Legal Advisor............................................        5-4

**CHAPTER 6 – <u>CONDUCT GRADING SYSTEM, STANDING, AND
UNSATISFACTORY CONDUCT ALTERNATIVES</u>**

<u>SECTION</u>        <u>SUBJECT</u>

6.1        Grading System..................................................................        6-1
6.2        Conduct Standing...............................................................        6-1
6.3        Counseling and Notification of Deficient Status................        6-2
6.4        Unsatisfactory Conduct Procedures....................................        6-3
6.5        Commandant Discretion Regarding Unsatisfactory Conduct............        6-3

**CHAPTER 7 - <u>MIDSHIPMEN INFORMATION DATA SYSTEM (MIDS)</u>**

<u>SECTION</u>        <u>SUBJECT</u>

7.1        General...............................................................................        7-1
7 2        Entering a Form-2..............................................................        7-1
7.3        Updating a Form-2.............................................................        7-2
7.4        Validating a Form-2...........................................................        7-3

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## CHAPTER 8 – <u>CONDUCT REMEDIATION</u>

<u>SECTION</u>        <u>SUBJECT</u>

8.1             General............................................................................        8-1
8.2             CMEO............................................................................        8-1
8.3             ADEO............................................................................        8-1
8.4             Conduct Remediation......................................................        8-1

## <u>LIST OF TABLES</u>

4-A: Table of Authorized Sanctions…………..........................................        4-1
4-B:  Loss of Privileges………………………………………………..        4-8
6-A: Demerit Ranges per Conduct Semester Letter Grade.......................        6-1
6-B: Demerit Allowances............................................................................        6-2

## <u>LIST OF TABS</u>

TAB A:  Offense Elements
TAB B:  Midshipman Counseling Form - Sample Form-1
TAB C:  U.S. Naval Academy Acknowledgment and Waiver of Midshipman Suspect's Rights
TAB D:  Notification of Potential Reimbursement for Advanced Education
TAB E:  Sample Preliminary Inquiry Report
TAB F:  Sanctions Worksheet
TAB G:  Midshipman's Acknowledgement and Award of Restriction Form
TAB H:  Restriction Card
TAB I:  Sample Conduct Probation Letter
TAB J:   Sample Final Report of Conduct Remediation
TAB K:   Conduct Remediation Extension Request
TAB L:  Report of Conduct Remediation Evaluation ICO {MIDN, ALPHA}

Ex. H

## CHAPTER 1

## INTRODUCTION TO THE ADMINISTRATIVE PERFORMANCE AND CONDUCT SYSTEM

### 1.1  General

   a.  Authority.  10 U.S.C. § 8462; Article 2, UCMJ; Rule for Courts-Martial 306; JAGMAN §§ 102-104; USNAINST 1610.6 (series).

   b.  Terminology.  The Administrative Performance and Conduct System will hereafter be referred to as the Conduct System in this instruction.

   c.  Purpose

      (1) The Conduct System is intended to be remedial and educational, and provides the foundational and practical guide for expected midshipman behavior.  The system is designed to promote good order and discipline through positive behavioral changes via counseling and sanctions that permit midshipmen to show a renewed willingness to adhere to the rules and regulations of the Naval Academy and to accept personal responsibility for their actions.  The Conduct System should be a source of pride for each and every midshipman at the Naval Academy.  Each midshipman must have a strong moral conviction to uphold the highest standards and ideals of the Naval Academy and to live up to the examples of those who have gone before.

      (2) The Conduct System and this manual are a leadership tool, not a substitute for leadership.  This instruction and the Conduct System provide expectations and guidance to all midshipmen, who are each charged with developing and exercising leadership, accountability, authority, and responsibility.  Midshipmen are expected to comport their behavior with the expectations and spirit of the Conduct System, and for it to be effective, they must take an active role in its implementation.  Midshipmen are expected to take ownership of the Conduct System through their involvement in investigations, performance of counseling, attendance at hearings, assessment of guilt under limited circumstances, and assignment of discipline with delegated authority.  The Conduct System also provides a means to prepare midshipmen for Fleet service by educating them on the investigative process, legal considerations, and the importance of appropriate corrective measures.  The Conduct System will serve to hold midshipmen accountable to the standards set forth in the Uniform Code of Military Justice (UCMJ), Midshipmen Regulations (MIDREGS), other USNA instructions and regulations, U.S. Navy instructions and regulations, and federal, state, and local laws during their time at the Naval Academy.  Conduct, both positive and negative, is heavily weighted, along with other criteria, in evaluating a midshipman's advancement to the next class and aptitude for commissioning.

   d.  Nature.  The Conduct System provides non-punitive measures such as extra military instruction (EMI), counseling, administrative withholding of privileges, and remediation.  It also provides disciplinary measures such as reprimands, award of demerits, disciplinary tours, restriction, conduct probation, and other appropriate sanctions specifically described herein, which are more serious than non-punitive measures but less serious than non-judicial punishment

Ex. H

under Article 15, UCMJ or trial by courts-martial.  It is purely administrative in nature and is not governed by the Military Rules of Evidence.  The procedures established in this instruction are designed in part to assist the Superintendent in assembling all pertinent information prior to submitting a report of unsatisfactory conduct and a recommendation for separation to the Secretary of the Navy under 10 U.S.C. § 8462.  The Superintendent may however, submit such a report without implementing any of the procedures contained in this instruction.  Procedural errors or irregularities in investigations and hearings normally do not invalidate the proceedings or any action of the Commandant or Superintendent based thereon.  However, those constitutional rights inherent in administrative due process will be afforded to each midshipman.

**1.2  <u>Standards of Performance</u>.**  A midshipman's dedication, commitment to excellence, and exemplary standard of conduct apply both on and off duty, in personal behavior, and in relations with all others.  Midshipmen must comply with the substance, spirit, and intent of all directives.  Any conduct which reflects discredit upon the Brigade of Midshipmen, the Naval Academy, or the Navy, which is in violation of any federal, state, or local law, or which indicates questionable personal morality is considered unbefitting of a U.S. Navy or Marine Corps officer candidate.  Midshipmen found to be unsatisfactory in conduct may be recommended for separation if it is determined that their retention is not in the best interests of the naval service.

**1.3  <u>Basic Principles of the Conduct System</u>**

    a.  Types of documentation

     (1) <u>Form-1 (Basic Counseling Form)</u>.  A Form-1 (TAB B) may be written and entered to record both positive and negative behavior.  While leaders are encouraged to use the Form-1 as a positive counseling tool, the document stands as the lowest level means for reporting misconduct.  Negative Form-1s are not punitive but may result in counseling or EMI.  EMI is never punitive and is designed to assist midshipmen in correcting a specific discrepancy in appearance or behavior or in adapting to military life.  EMI should be related to and directed towards the correction of a particular deficiency.  The purpose of the Form-1 is to record behavior trends that will encourage improved behavior without punitive consequences.  The Form-1 concept should encourage chains of command to document positive and negative behavior, allowing leaders to become more directly involved in midshipmen development.

     (2) <u>Form-2 (Misconduct Report Form)</u>.  In the event that appropriate corrective action warrants more than counseling or EMI, disciplinary action may be sought by initiating a Form-2 through the Midshipmen Information Data System (MIDS).  The Form-2 identifies who is suspected of committing an offense and delineates whether the alleged action is considered a Minor-level, Major-level, or 6K-level offense.  Chapter 2 of this manual describes the different levels of offenses.  Chapter 4 of this manual identifies the potential types of sanctions.

    b.  Unit Commander Responsibilities.  Commanders are responsible for good order and discipline within their units.  Generally, discipline can be maintained through consistent positive leadership including, when necessary, applying appropriate administrative corrective measures.  Further action within the Conduct System may be required when non-disciplinary administrative corrective measures (Form-1) are inadequate.  The chain of command and Adjudicating Authorities contemplating action within the Conduct System should consider the nature of the

Ex. H

offense, the record of the midshipman, the need for good order and discipline within the Brigade of Midshipmen, and the effect of conduct action on the midshipman.

c.  Midshipmen Loyalty to Service.  The Conduct System is intended to be correctional and educational, teaching midshipmen to accept full responsibility for their actions and conduct and to place loyalty to the service above self-interest or loyalty to friends or classmates.

d.  Application to Midshipmen and Cadets.  All persons enrolled as midshipmen at the U.S. Naval Academy and all cadets of other service academies temporarily attached to the Brigade of Midshipmen are subject to this instruction and all provisions of federal, state, and local law made applicable to members of the armed services pursuant to Article 134 of the UCMJ.  All midshipmen are further subject to the provisions of U.S. Navy Regulations and applicable instructions and notices.

e.  Double Jeopardy, Multiple Processing of the Same Charge, Limitations on Sanctions Awarded Under the Conduct System.

(1) Multiple Charges for the Same Incident.  When several related offenses result from a singular event or incident, only one report and case file will be generated for each accused midshipman.  The most serious accusation will be documented as the primary charge while all other alleged offenses will be listed as secondary charges.  Ultimately, a single comprehensive award of sanctions will be determined by the Adjudicating Authority upon finding the accused guilty of any or all charges which resulted from the event.  Although strongly encouraged, there is no requirement that all charges stemming from a single incident be adjudicated at the same time; however, the cumulative award of sanctions from multiple proceedings cannot exceed the maximum sanctions allowed for the most serious offense, of which the midshipman was found guilty, arising from the incident.

(2) Conduct and Honor Charges.  A midshipman will not be adjudicated under both the Conduct System and Honor System for the same offense (e.g., Tap and Go, theft).  All charges stemming from a single course of conduct, without an intervening event, will normally be adjudicated through only one of the systems.  While a reporter may choose to report a case through any appropriate system, the Conduct Officer and Honor Officer should coordinate, in consultation with the Commandant's Legal Advisors, to determine the most appropriate system for disposing of any case which was or could have been referred into both systems.  However, the Commandant has final authority as to which system will be used in any particular case.  This does not preclude the possibility that a midshipman will be charged in both systems for a particular case based on subsequent acts (e.g., lying at any time to cover up prior or ongoing misconduct).  The Commandant invariably reserves the authority to assign Honor Remediation for a conduct offense that contains an honor element (e.g., theft or using/possessing a false ID).

(3) Civilian Charges and the Conduct System.  It is not considered double jeopardy for a midshipman who is subject to prosecution by civilian authorities also to be charged under the Conduct System.  The Conduct System and the civilian criminal justice system are not mutually exclusive.  It is not necessary that any civilian legal action be completed prior to administrative action taking place under the Conduct System.

Ex. H

(4) Double Sanctions Prohibited.  The total award of sanctions for all offenses arising from a single incident or course of conduct cannot exceed the maximum sanctions allowed for the most serious offense of which the midshipman was found guilty arising from the incident, regardless of the number of adjudications in which the case is heard.  Additional sanctions may not be awarded by charging offenses arising from the same incident or course of conduct in different cases.  Action pursuant to the Conduct System does not preclude later trial by courts-martial, in accordance with the UCMJ.

(5) Increase in Sanctions Prohibited.  Once particular sanctions under the Conduct System have been awarded, they may not be increased upon appeal or otherwise.  This does not prohibit the Commandant from placing a midshipman on conduct probation and setting appropriate conditions, to include loss of privileges, in accordance with sections 3.5, 3.6, and 4.6.

(6) Multiple Awards of Sanctions Allowed.  There is no requirement that all open misconduct cases for a particular midshipman be adjudicated by the same Adjudicating Authority.  An Adjudicating Authority adjudicating multiple cases regarding unrelated incidents of alleged misconduct in a single hearing may award the maximum sanctions allowed for the most serious offense of which the midshipman was found guilty for each case.  The Adjudicating Authority must clearly identify the sanctions awarded for each case.  However, multiple cases involving misconduct with a significant nexus (e.g., multiple instances of unauthorized absence, fraternization, or harassment), must be treated as one case, triggering the prohibition on double sanctions.  Adjudicating Authorities should consult with the Commandant's Legal Advisor prior to adjudicating multiple cases for the same midshipman.

(7) Statute of Limitations.  Sanctions under the Conduct System may not be awarded for Minor-level offenses which were committed more than two years before the date of initial adjudication.  Sanctions may be awarded for any 6K-level or Major-level offenses committed at any time after 13 August 2019, however, no sanctions may be awarded for a 6K- level or Major-level offense committed prior to 13 August 2019 which were also committed more than two years before the date of initial adjudication.

**1.4  Design of the Conduct System**.  Alleged violations of the Conduct System are generally categorized as either Minor-level or Major-level offenses.  Particularly discreditable Major-level offenses are further defined as 6K-level violations and are normally sent directly to the Deputy Commandant of Midshipmen for action.

**1.5  Conduct Semesters Defined**.  Any offense for which a midshipman is found guilty contributes to the Conduct grade for the Conduct semester in which the offense took place, regardless of adjudication date or computer entry date. Conduct semesters are defined as:

  a.  Fall: 0001 of the day after graduation until 0000 of the overall last day of fall final exams.

  b.  Spring: 0001 of the day following the last overall fall final exams until 0000 graduation day.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## 1.6  Conduct System and Honor System Relationship.

a.  In accordance with the Honor Concept, midshipmen, like officers in the Fleet, are expected to answer honorably and truthfully <u>all</u> questions posed to them unless a midshipman suspected of an offense exercises their right to remain silent pursuant to Article 31(b), UCMJ.  However, disciplinary action cannot be based on responses to a question which may reasonably, by design, elicit a self-incriminating response from a midshipman without having actually suspected the midshipman of misconduct prior to asking the question (e.g., asking a group if anyone ever drank underage).

b.  Any time a midshipman makes a self-incriminating statement, whether prompted or not, the person receiving the statement must inform the midshipman of their rights under Article 31(b) prior to asking any follow-up questions.

c.  An accused midshipman must raise an objection to evidence under this section at any time prior to the announcement of findings at an adjudication hearing.  Failure to raise a timely objection under this section shall be considered a waiver.  The Adjudicating Authority may also dismiss a case sua sponte if the Adjudicating Authority determines the evidence was obtained in violation of this section.  Refer to paragraph 3.7 for further discussion on the admissibility of evidence.

## 1.7  Conditions for Graduation

a.  1/C Midshipmen who have at least a 2.0 Conduct average (see Chapter 6 for calculations) are eligible to graduate with their class, assuming they meet all other graduation requirements.

b.  1/C Midshipmen may not be allowed to graduate with their class if:

(1) They are suspected of an offense under the Conduct System, UCMJ, or federal, state, or local law, or

(2) They are the subject of a pending conduct case, or

(3) They have unserved restriction as of graduation day.

c.  Only the Superintendent may authorize late graduation.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## CHAPTER 2

## SPECIFIC CONDUCT OFFENSES

### 2.1  Introduction

a.  This chapter lists typical conduct offenses and their corresponding levels of categorization.
Though this list is thorough, it is not exhaustive.  Any alleged conduct infraction not specifically
addressed within this manual may be entered into the Conduct System as a general offense.

b.  Offense Codes.  A four-digit offense code is assigned to each delinquency defined within
this manual.  The first two digits of the offense code indicate the section of this chapter under
which the delinquency falls (reflecting the general nature of the offense), while the second two
digits identify the specific offense.

c.  Attempts to Commit an Offense

(1) An attempt is an act done with the intent to commit a conduct offense.  An attempt is
an overt act amounting to more than mere preparation which tends, even though fails, to affect
the commission of the offense.

(2) Attempts should be charged as the intended offense in MIDS.  The maximum sanctions
are the same as those which would be warranted by the intended offense were it successful.

(3) A person who undertakes acts with the specific intent to commit an offense, then
*voluntarily* abandons the undertaking due solely to their own sense that the act is wrong, is not
guilty of attempting to commit the offense.  A person whose undertaking is terminated by
unforeseen circumstances or other reasons, such as waiting for a better opportunity to commit the
offense undetected, is guilty of attempting to commit the offense.  A person who voluntarily
abandoned an attempted offense may still be guilty of a separate or lesser offense.

d.  The elements for each offense can be found in Tab A.

### 2.2  Regulations, Orders, Instructions, Duty

a.  Disobedience of orders and regulations normally is more serious than an error in judgment.
Direct orders are given with the expectation of compliance in both the spirit and the letter of the
order.

b.  Orders may be addressed to an individual or to a group.  Orders may be issued verbally
(e.g., "Midshipman X, do this now.") or in writing (e.g., "The following midshipmen must turn
in lacrosse equipment:  MIDN 2/C X, MIDN 3/C Y..." or "All 3/C Midshipmen will empty their
basement lockers by...").

c.  Sanctions awarded for delinquencies involving duty should include consideration of the
nature of the duty, the position of the midshipman, and whether the delinquencies were the result
of ignorance, laziness, or negligence.  The effects of the delinquency should also be considered.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

d.  Failing to assume a responsibility, evading a regulation, permitting other midshipmen under one's command or control to evade responsibility or regulation, or overlooking or failing to report breaches of regulations to competent authority are all delinquencies which indicate poor motivation and a low concept of duty.

| **Offense Code** | **Delinquency** | **Level** |
|---|---|---|
| **02.01** | Cancelled. | **NA** |
| **02.02** | Violation of oral or written orders addressed to an individual or a group. | **Variable** |
| **02.03** | Cancelled. | **NA** |
| **02.04** | Violation of a local instruction, regulation, or notice. | **Variable** |

**NOTE:**  Specify the instruction, regulation, or notice which was violated.  If the offense is specifically described by another offense code, that offense code should be used.

**NOTE**:  Local instructions, regulations, and notices are those applicable specifically to the Brigade of Midshipmen, including but not limited to USNA Instructions, Commandant of Midshipmen (COMDTMIDN) Instructions, and Academic Dean (ACDEAN) Instructions.

| | | |
|---|---|---|
| **02.05** | Failure to perform a duty properly / dereliction of duty. | **Variable** |
| **02.06** | Interfering with an individual who is performing a duty. | **Variable** |
| **02.07** | Aiding, abetting, counseling, commanding, or procuring the commission of an offense actionable under this instruction. | **Variable** |

**NOTE:**  The level of this offense should generally be equal in magnitude to the offense committed by the principal offender.

**NOTE:**  Offense code 05.04 will be used for aiding/abetting an alcohol offense.

| | | |
|---|---|---|
| **02.08** | Failure to report or address a delinquency. | **Variable** |

**NOTE:**  Any action or omission which violates a lawful instruction, regulation, order, direction, or similar official guidance directed towards a midshipman is considered delinquent.  A delinquency can include a violation of the honor concept, academic instructions, and course policies.

| | | |
|---|---|---|
| **02.09** | Failure to use good judgment (if the offense is specifically described by another offense code, that offense code should be used). | **Variable** |

Ex. H

**NOTE:**  An accused is not guilty of this offense simply because the Adjudicating Authority would have made a different decision than the accused.  The question whether good judgment must be answered based on the totality of the circumstances.

### 2.3  Fourth Class Training Program

a.  Upper-class midshipmen have the duty to lead and be responsible for 4/C Midshipmen.  In the execution of that duty, upperclassmen are to behave in a professional manner at all times.  4/C Midshipmen have the duty to abide by the terms of the plebe year training program.

| Offense Code | Delinquency | Level |
|---|---|---|
| 03.01 | Failure of 4/C Midshipman to follow requirements of plebe year training program as outlined in MIDREGs, Reef Points, and other relevant instructions, directives, and orders. | **Minor** |

**NOTE:**  This offense code does not apply to requirements of the plebe year training program where other specific sanctions are provided (e.g., failure of ProKnow).

| | | |
|---|---|---|
| 03.02 | Failure of upper class midshipman to support the plebe year training program. | **Variable** |
| 03.03 | Moved to 04.22 | **NA** |
| 03.04 | Real-time electronic communications between 4/C and upperclassmen in violation of MIDREGS. | **Minor** |

**NOTE:**  This includes, but is not limited to, instant messaging, chat rooms, social networking sites, texting, or any comparable mode of communication.

### 2.4  Standards of Behavior.  The standards of decorum and conduct expected of a commissioned officer and a gentleman/lady are also expected of midshipmen.

| Offense Code | Delinquency | Level |
|---|---|---|
| 04.01 | Fraternization, not of a romantic or sexual nature. | **Major** |
| 04.02 | Fraternization, of a romantic or sexual nature. | **6K** |
| 04.03 | Sexual misconduct. | **6K** |

**NOTE:**  Sexual misconduct is any sexual act or contact at the Naval Academy or other locations under military control and sexual acts or contact committed under circumstances which are service discrediting or prejudicial to good order and discipline, including generation of pornographic materials.  Areas under military control include USNA, all naval vessels, all

Ex. H

military bases, all military vehicles, and all military aircraft.

**NOTE:** Examples of sexual misconduct include, but are not limited to, having the door locked while two or more individuals are in a room who are not all assigned roommates of the room, fondling, displays of affection on a rack, lying in a rack together, sexually motivated nudity, indecent exposure, generating pornography, oral sex, and sexual intercourse.

| 04.04 | Sexual harassment as defined in current SECNAV, OPNAV, and USNA Instructions. | **6K** |

**NOTE:** Sexual harassment includes, but is not limited to, unwelcome sexual advances, requests for sexual favors, and passive or indirect actions that create a hostile work environment such as sexually explicit posters, pictures or screen savers, and other verbal or physical conduct of a sexual nature.

| 04.05 | Disrespect or insubordination to a superior or a individual in a position of authority. | **Variable** |

**NOTE:** Individuals in a position of authority include company Senior Enlisted Leaders and midshipman chain of command.

**NOTE:** It is not required that the disrespectful behavior be in the presence of the superior, but ordinarily one should not be held accountable under this offense code for what was said or done in a purely private conversation.

| 04.06 | Challenge to personal combat or threat of physical violence. | **Major** |

**NOTE:** When the challenge or threat culminates in physical action, conduct code 04.21 (UCMJ Article 128) will be charged.

| 04.07 | Inappropriate use of computer or government network. | **Major** |

| 04.08 | Possession, viewing, or display of pornographic materials in Bancroft Hall, on the Naval Academy complex, or at other locations under military control. | **Major** |

| 04.09 | Displays of affection (anytime in Bancroft Hall or when in uniform in public). | **Major** |

**NOTE:** Displays of affection are defined as physical acts which could reasonably be interpreted by an observer as evidence that those participating are involved in a romantic relationship. Displays of affection include, but are not limited to, hand holding, touching, massaging/back rubs, sitting on a lap, touching, and kissing.

| 04.10 | Harassment of a non-sexual nature. | **Variable** |

Ex. H

**NOTE:**  Harassment includes, but is not limited to, abusive or pejorative language and actions that denigrates another person.  Harassment typically involves, but is not required to involve, language and actions concerning age, ethnicity, race, religion, sex, or sexual orientation. Examples include, but are not limited to, racial or ethnic slurs, humor, jokes, or teasing about sex, race, age, religion, disability, or gender-specific traits; abusive language, insults, or threats; vulgar sounds or gestures; offensive or hateful pictures, posters, calendars, cartoons, or obscene e-mail; offensive or derogatory written materials; exclusionary or demeaning actions or activities based on age, ethnicity, sex or race.

| | | |
|---|---|---|
| 04.11 | Destruction or damage of government or private property. | **Major** |

**EXCEPTION:**  This does not refer to destruction or damage of one's own property.  However, such an action may be covered by another offense code, depending on the circumstances.

| | | |
|---|---|---|
| 04.12 | Introduction of, or failure to remove, unauthorized persons from Bancroft or King Hall. | **Major** |
| 04.13 | Entering a restricted area, including roof areas or any areas marked as restricted. | **Major** |
| 04.14 | Unauthorized means of ingressing or egressing either Bancroft Hall or the Naval Academy grounds (e.g., "jumping the wall"). | **Major** |

**NOTE:**  Offense code 04.16 will be used for instances of unauthorized ingress to or egress from Bancroft Hall relating to class privileges listed in MIDREGS (e.g., "class doors").

| | | |
|---|---|---|
| 04.15 | Possession or use of a false, altered, or unauthorized identification card, pass, or similar document (including but not limited to driver's licenses, military ID cards, and other forms of identification). | **6K** |

**NOTE:**  The use or attempted use of false, altered, or unauthorized identification with the intent to deceive is an honor violation.  Possession, without an attempt to use, is strictly a conduct offense.

| | | |
|---|---|---|
| 04.16 | Usurping any special or basic class authorizations or privileges. | **Variable** |

**NOTE:**  The offense code should be used for incidents including the unauthorized wearing of civilian clothes and the use of "class doors."  Offense code 04.19 should be used for instances of driving, maintaining, or operating a vehicle relating to class privileges.

| | | |
|---|---|---|
| 04.17 | Carelessness in operating a vehicle | **Major/6K** |

**NOTE:**  A careless manner is any manner which may reasonably pose a risk to other vehicles, pedestrians, or bystanders.  This includes, but is not limited to, speeding and using a cell phone while driving.

Ex. H

**NOTE:**  This should be charged as a 6K-level offense when the carelessness results in a collision.

**04.18**          Parking in violation of MIDREGS and/or military base          **Variable**
                   regulations.

**NOTE:**  Minimum sanctions for parking violations by a midshipman with a vehicle registered with Brigade Ops and properly displaying vehicle stickers/placard:

   First Offense:  25 demerits, seven days of restriction and loss of Yard parking privileges for 30 calendar days.

   Second Offense:  50 demerits, fourteen days of restriction, and loss of Yard parking privileges for not less than 120 calendar days.

Minimum sanctions for parking violations by a midshipman without a vehicle registered with Brigade Ops and/or properly displaying vehicle stickers/placard are 50 demerits, 21 days of restriction, and loss of Yard parking privileges for not less than 180 calendar days.

**04.19**          Driving, maintaining, or operating a motor vehicle          **Minor**
                   in violation of MIDREGS.

**NOTE:**  Minimum sanctions for driving, maintaining, or operating a motor vehicle in violation of MIDREGS are 25 demerits, seven days of restriction, and loss of Yard parking privileges for 120 calendar days starting from the first date of eligibility for Yard parking privileges per MIDREGS.

**04.20**          Failure to have the door fully open when two or more          **Minor**
                   individuals are in a room who are not all assigned
                   roommates of the room.

**NOTE:**  All midshipmen present in the room should be charged with this offense code, not just the midshipman assigned to the room.

**NOTE:**  The offense code 04.03 should be used for instances when the door is locked while the room is occupied by two or more individuals who are not all assigned roommates of the room.

**04.21**          Violation of UCMJ, Navy Regulations, SECNAV and OPNAV          **6K/Major**
                   Instructions, General Orders, federal, state, or local
                   laws.

**NOTE:**  Specify the law or regulation which was violated.  If the offense is specifically described by another offense code, that offense code should be used.

**04.22**          Hazing.          **6K**

**NOTE:**  Hazing violates 10 U.S.C. § 8464, which defines hazing as "any unauthorized assumption of authority by a midshipman whereby another midshipman suffers or is exposed to any cruelty, indignity, humiliation, hardship, or oppression, or the deprivation or abridgement of any right."  While 10 U.S.C. § 8464 states that "no midshipman may be dismissed for a single

Ex. H

act of hazing except by sentence of a court-martial," related offenses may result in separation through the Conduct System and 10 U.S.C. § 8462.

**04.23**        Conduct unbecoming a midshipman.                **Variable**

**NOTE:**  Conduct unbecoming a midshipman means action or behavior in an official capacity which, in dishonoring or disgracing the person as a midshipman, seriously compromises the midshipman's character, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the midshipman personally, seriously compromises the person's standing as a midshipman.  There are certain moral attributes common to the ideal midshipman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, and cruelty.  Not everyone is or can be expected to meet unrealistically high moral standards, but there is a limit of tolerance based on customs of the Service and military necessity below which the personal standards of a midshipman cannot fall without seriously compromising the person's standing as a midshipman.

## 2.5  Alcohol and Drugs

a.  Definitions:

(1) Alcohol - beverage with any percentage of alcohol content.

(2) Under the influence - any impairment of one's ability to function normally.

(3) Illegal drugs – non-prescribed narcotics and other controlled substances, including but not limited to, amphetamines, cocaine, heroin, lysergic acid diethylamide, marijuana, methamphetamine, opium, phencyclidine, and barbituric acid, including phenobarbital and secobarbital.  "Controlled substance" also applies to any substance included in Schedules I through V established by the Controlled Substances Act of 1970.  This also includes all compounds banned by current Department of the Navy regulations which have not been prescribed by authorized medical personnel, such as anabolic steroids.

| **Offense Code** | **Delinquency** | **Level** |
|---|---|---|
| **05.01** | Irresponsible drinking. | **Major** |

**NOTE**:  Evidence of Irresponsible Drinking includes, but is not limited to, use of excessive profanity, aggressive and/or disrespectful behavior, excessive stumbling or falling down, vomiting.

| | | |
|---|---|---|
| **05.02** | Cancelled. | |
| **05.03** | Cancelled. | |
| **05.04** | Aiding/abetting an alcohol offense or failure to prevent or act upon an alcohol offense. | **6K/Major** |
| **05.05** | Consumption, possession, or introduction of alcohol within/into Bancroft Hall or aboard ship. | **6K** |

Ex. H

| | | |
|---|---|---|
| **05.06** | Providing alcohol to underage persons. | **6K** |
| **05.07** | Being under the influence of alcohol in a nature that brings discredit upon the naval service, outrages public decency, or results in a breach of the peace. | **6K** |
| **05.08** | Consuming alcohol or being under the influence of alcohol while on duty. | **6K** |

**NOTE:**  Midshipmen are considered on duty for all military obligations (e.g., class, duty section), mandatory Brigade events (e.g., lectures, sporting events), and any other time designated as such by competent authority.  End of liberty is not considered on duty for purposes of this offense code unless associated with another mandatory event (e.g., uniform inspection).

| | | |
|---|---|---|
| **05.09** | Cancelled. | |
| **05.10** | Consumption or possession of alcohol in violation of applicable federal, state, or local law (this includes underage drinking). | **6K** |
| **05.11** | Consumption or possession of alcohol in circumstances prohibited by local instruction, regulation, or notice, other than in Bancroft Hall or aboard ship. | **Major** |

**NOTE:**  This includes drinking as a 4/C Midshipman, drinking while on Movement Order (MO), and possession of alcohol in any vehicle associated with a MO to include privately owned vehicles.

| | | |
|---|---|---|
| **05.12** | Drunk driving or driving under the influence of alcohol. | **6K** |
| **05.13** | Use, possession, sale, or transfer of illegal drugs or drug paraphernalia. | **6K** |

## 2.6  Military Appearance

| **Offense Code** | **Delinquency** | **Level** |
|---|---|---|
| **06.01** | Unsatisfactory appearance in uniform (pattern of behavior). | **Minor** |

**NOTE:**  Discrepancies must be specified and should have been documented as Form-1s prior to entry as a Form-2.

**NOTE:**  A pattern of behavior is three or more instances.

| | | |
|---|---|---|
| **06.02** | Unprepared for room or uniform inspection. | **Minor** |

COMDTMIDNINST 1610.2K
27 Jul 2020

| 06.03 | Unsatisfactory room standards. | **Minor** |

**NOTE:** For the first occurrence of unsatisfactory room standards, at a minimum, a negative Form-1 shall be issued. Minimum sanctions for a second occurrence within a single semester are five (5) tours. Minimum sanctions for a third occurrence within a single semester are ten (10) days of restriction. A fourth occurrence (or more) within a single semester should be charged as offense code 02.05 at least at a Major-level.

| 06.04 | Wearing of uniform in a manner which is prejudicial to good order and discipline or which brings discredit upon the naval service. | **Variable** |

**NOTE:** This offense code includes, but is not limited to, improper wear of the uniform in public.

## 2.7 Absences or Tardiness

   a. Timeliness and accountability are attributes of a midshipman who is self-disciplined and possesses an enduring sense of duty. Midshipmen must learn to allow sufficient time for unforeseen circumstances and delays when reporting. Timeliness to formations when a group or unit may be delayed because of an individual's tardiness should be given greater emphasis than tardy arrival to an obligation which affects only the guilty individual.

   b. The magnitude of tardiness is only partly indicated by the length of time involved. The degree of judgment exercised by the midshipman in attempts to report for duty should also be considered. For example, a midshipman may be only slightly late, but if actions indicate a lackadaisical attitude or lack of planning, then that midshipman should be dealt with more severely than one who was substantially late due to extenuating circumstances. Communication with the chain of command is critical to successful accountability.

| **Offense Code** | **Delinquency** | **Level** |
|---|---|---|
| 07.01 | Absence without authority from an academic class, military obligation, or formation. | **Variable** |
| 07.02 | Absence without authority for greater than 24 hours. | **6K** |
| 07.03 | Cancelled. | |
| 07.04 | Cancelled. | |
| 07.05 | Cancelled. | |
| 07.06 | UA after reporting for taps (i.e., "touch and go"). | **Major** |
| 07.07 | Breaking restriction and/or UA from tours or restriction. | **Variable** |

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**NOTE:**  Minimum sanctions for breaking /Unauthorized Absence (UA) from restriction are five (5) days of restriction for the first occurrence and fifteen (15) days of restriction for the second occurrence.  Any occurrence after the second occurrence during a period of restriction shall be charged at least as a Major-level offense.

2-10

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## CHAPTER 3

## PROCEDURES FOR REPORTING, INVESTIGATING, AND ADJUDICATING OFFENSES

### 3.1  Reporting a Conduct Offense

a.  Methods of reporting and documenting conduct offenses include:

(1) Form-1 (TAB B).  The Form-1 is a counseling form which can be used to document both positive and negative behavior.  The Form-1 is designed to mirror processes in the Fleet and to document patterns of behavior.  When awarding sanctions is not appropriate, minor conduct offenses may be documented with a Form-1.  All officers, faculty, and midshipmen within the chain of command are encouraged to utilize this document and should route Form-1 reports via e-mail or paper copy to the Company Officer or Company Senior Enlisted Leader who will maintain all reports in midshipmen performance jackets.

(2) Form-2.  The Form-2 is an electronic report form for a conduct offense, which is maintained in MIDS.  Any officer, Senior Enlisted Leader, faculty member, or 1/C Midshipman who has a reasonable belief that a conduct offense has been committed should report the suspected offense using a Form-2 in MIDS.  Suspected offenses may also be reported directly to Company Officers, Senior Enlisted Leaders, or the Commandant's Conduct Officer for entry into MIDS.  The Conduct Officer and company leadership will receive a notification e-mail that a suspected offense has been reported.  The accused midshipman should **not** be informed of the allegations at this time.

(a) Upon submission of a Form-2, an investigator will be assigned in accordance with Section 3.2, unless an investigation is not required.

(b) The offense description included in the Form-2 should be a short and concise statement, but with sufficient detail to describe the alleged event.  The name(s) of any other midshipmen involved in the same offense should be included in the offense description.

(c) Per section 1.3(e)(1), (6), multiple alleged offenses that are closely related in time, place, or nature so as to form one course of action will normally be considered as one event.  Under such circumstances, only one Form-2 will be generated.  The most serious charge will be used as the primary charge; all others will be listed as secondary charges.

### 3.2  Investigating Reported Offenses

a.  All reports of a suspected Variable, Major-level, or 6K-level offense must be investigated unless excepted by the Conduct Officer in consultation with the Commandant's Legal Advisor.  Minor-level conduct offenses do not require an investigation unless specifically ordered by the Company Officer or higher authority.

(1) If the alleged offense appears to be criminal in nature, the Commandant's Legal Advisor must be immediately notified.  No investigation or adjudication under this instruction

Ex. H

shall proceed in such cases until authorized by the Commandant or the Legal Advisor.

(2) Any alleged offense that involves the potential for sexual harassment, discrimination, or an equal opportunity violation must be reviewed by the Command Managed Equal Opportunity (CMEO) Officer. The command CMEO Officer shall review the case prior to an investigation and/or prior to a conduct adjudication taking place to ensure proper reporting and protection of any potential victims. The following offenses are most often related to CMEO investigations:

04.02 Fraternization of a sexual nature
04.04 Sexual Harassment
04.08 Pornography in the Hall
04.10 Harassment, non-sexual
04.22 Hazing.

b. If an investigation is not required, the Company Officer will notify the accused midshipman of the formal charge(s) via MIDS and schedule an adjudication per Section 3.4.

c. If an investigation is required, a Preliminary Investigative Officer (PIO) will be assigned by either the Commandant's Conduct Officer or the Legal Advisor; however, the assignment may be delegated to the respective Battalion Officer or Battalion Executive Officer (XO). The PIO will be an officer or Senior Enlisted Leader, but not the Company Officer or Senior Enlisted Leader from the accused midshipman's company or from the company of any victim.

d. Prior to conducting the investigation, the PIO must meet with the Commandant's Conduct Officer or Legal Advisor to ensure a clear understanding of the case. The PIO will interview all relevant witnesses, including the accused midshipman (the accused should normally be interviewed last), collect all applicable documents regarding the incident (e.g., emails, photographs, police reports), and complete the Preliminary Inquiry Report (PIR) (TAB E) for submission to the Deputy Commandant of Midshipmen.

(1) The PIO should collect written statements, when possible, and document interviews in a Results of Interview memorandums (ROI).

(2) PIOs must safeguard the rights of all midshipmen, including the accused, throughout the investigative process, including the issuance of Article 31(b) warnings to all midshipmen suspected of an offense.

(3) PIOs should direct that witnesses who are subject to Navy authority not discuss their statement or testimony with other witnesses or with persons who have no official duty with respect to the case until the case is closed.

(4) Investigations should normally be completed within five (5) working days of assignment; however, some cases may take more time depending on complexity. Any time an investigation takes more than five working days, starting on the fifth day, the PIO should provide a daily update to the Commandant's Conduct Officer, unless otherwise directed by the Commandant's Conduct Officer.

Ex. H

e.  The PIR shall contain a summary of events and a synopsis of the facts surrounding an alleged offense as supported by the enclosures in the report.  The summary, synopsis, and statements of a PIO in a PIR are not evidence.  Enclosures in the report may include, but are not limited to, the following:  Results of Interview memorandums, documentary evidence, statements from all witnesses, statements from the accused, the Acknowledgment of Midshipman Suspect's Rights Form (TAB C), the Notification of Potential Reimbursement for Advanced Education Form (TAB D), log entries, leave papers, and chits.  All of the facts listed must be derived from the enclosures in the report.  The report will also contain a summary of offenses which breaks down each offense by element (TAB A) and provides detailed facts that do or do not support each element.  Finally, the PIO should state whether there appears to be sufficient evidence that an offense has been committed and if so, at what level the case should be adjudicated.

f.  Upon completion, the PIR will be forwarded to the Conduct Officer for routing to the Deputy Commandant of Midshipmen via the Legal Advisor.  The Deputy Commandant of Midshipmen will determine the offense(s) if any, with which the midshipman will be formally charged based on probable cause.  The Conduct Officer will make the appropriate corrections to the Form-2.  The accused midshipman will then be notified via MIDS of the formal charges and given an opportunity to enter a plea into MIDS.

g.  Midshipmen who have been formally charged with a conduct offense may enter a plea and a statement into MIDS prior to their scheduled adjudication.  An accused midshipman may change his or her plea at any time prior to the findings of guilt at an adjudication per Section 3.3.

(1) Every midshipman has the absolute right to plead "not guilty," whether guilty in fact or not.  Pleading "not guilty" when one did in fact commit the offense is <u>NOT</u> an honor violation.  Midshipmen shall never be pressured to plead "guilty." If a midshipman fails to enter a plea, it shall be treated as a "not guilty" plea.

(2) By pleading "guilty," a midshipman acknowledges that the offense was culpably committed as alleged and that the midshipman is liable for sanctions.  A guilty plea waives the right to appeal a finding of guilt.

(3) Any statement made in MIDS can be considered by the Adjudicating Authority and subsequent reviewers regardless of plea.

**3.3  <u>Adjudicative Hearings</u>**

a.  Determining Adjudicating Authority.  Normal Adjudicating Authority for conduct offenses is as follows:

(1) Minor:  Company Officer

(2) Major:  Battalion Officer

(3) 6K:  Deputy Commandant of Midshipmen

Ex. H

b.  The Deputy Commandant of Midshipmen will determine the offense level of the charged misconduct for a variable offense.  A variable offense can be charged as a Minor-level, Major-level, or 6K-level offense.  Factors which may be considered include, but are not limited to, the egregiousness or frequency of the alleged misconduct and its effects on others.  An Adjudicating Authority may not adjudicate a variable offense, including as a minor, without approval from either the Deputy Commandant of Midshipmen or the Commandant's Conduct Officer.

c.  Delegation of Adjudicating Authority.  Adjudicating Authority may not be delegated further than as directed by the Deputy Commandant of Midshipmen for a particular case.  Adjudicating Authorities may allow 1/C Midshipmen in leadership positions (including Brigade, Regiment, Battalion, and Company striper positions) to assist with an adjudication in an under-instruction status; however, all findings with respect to guilt and all awards of sanctions ultimately must be made by the Adjudicating Authority—Adjudicating Authorities must be physically present for every adjudication.  A Battalion Officer may also allow a Company Officer to adjudicate a case assigned to the Battalion Officer, but only under direct supervision.  1/C Midshipmen may not assist with the adjudication of other 1/C Midshipmen; 1/C Midshipmen must be adjudicated solely by the commissioned officer Adjudicating Authority.  Senior Enlisted Leaders are not authorized to be an Adjudicating Authority.

(1)  Cases Involving Two or More Midshipmen in the Same or Related Incident.  For offenses alleged to have been committed by more than one midshipman, it is normally appropriate to have one Adjudicating Authority for all involved, regardless of class, company, or offense level.  It is the collective responsibility of all applicable Adjudicating Authorities to determine if the group of offenders from a related incident should be heard at one time by a single authority.  If it is decided there should be only one Adjudicating Authority, in the case of minor offenses, the senior Company Officer of the accused midshipmen shall be the Adjudicating Authority.  If the cases of two or more midshipmen involved in the same incident are heard by different Adjudicating Authorities, the Adjudicating Authorities shall coordinate to maintain consistency of awarded sanctions that is in keeping with good order and discipline among the members of the Brigade, and with the particular facts of the case as they pertain for the individual midshipman being adjudicated.

(2)  Commandant's Discretion.  The Commandant retains the right to adjudicate or assign an Adjudicating Authority to any case alleging a violation of this instruction.

c.  Time Requirements for Adjudications of Minor-Level Offenses.  During the academic year, all cases for Minor-level offenses should be adjudicated within three working days of the Form-2 generation date.  If exceptional circumstances prevent adjudication within three working days, the Company Officer should communicate with the Commandant's Conduct Officer.

d.  Following review of the Form-2 and PIR, the Adjudicating Authority may take one of the following actions:

(1)  Dismiss the alleged offenses without a hearing.  A charge may be dismissed when the Adjudicating Authority determines that the evidence is insufficient to support a charge (e.g., the wrong midshipman was charged or an element of an offense is missing).  A dismissed charge may not be brought back against a midshipman unless new evidence is discovered which could

Ex. H

not have been known by the Adjudicating Authority or Investigating Officer at the time the charge was dismissed.  Charges should not be deleted from MIDS unless the charge clearly resulted from a clerical error (e.g., the wrong alpha number was entered) and the deletion is authorized by the Deputy Commandant of Midshipmen.

(2) Dispose of the case through alternative disposition.  Alternative disposition should be reserved for cases wherein the evidence suggests that the midshipman committed the offense, but the Adjudicating Authority assesses that corrective measures less severe than sanctions more appropriately address the situation (e.g., EMI or a Form-1).

(3) Schedule a hearing to adjudicate the alleged offense(s).

e.  Waiver of Adjudication.  Accused midshipmen who waive their right to a hearing also waive their right to confront and cross-examine witnesses and to call character witnesses.  They retain the right to submit written matters to the Adjudicating Authority, including character reference letters and statements regarding extenuating or mitigating circumstances.  The Adjudicating Authority retains the discretion to hold a hearing and require the presence of the accused midshipman in all cases.

f.  Pre-Hearing Notification.  A notice of 24 hours is normally considered reasonable for Major-level and 6K- level offense hearings, and a notice of six (6) hours is normally considered reasonable for Minor-level offense hearings.  Requests for delay of a conduct hearing must be submitted to the Adjudicating Authority, via the Company Officer, sufficiently in advance of a hearing in order that proper consideration may be given to the request prior to the hearing's commencement.  Untimely requests will be denied, absent extenuating circumstances.

g.  Rights of an Accused Midshipman Immediately Prior to and During a Conduct Adjudication Hearing.

(1) Right to Counsel.  Accused midshipmen have the right to consult with legal counsel prior to a hearing; however, the hearing will not be delayed without the approval of the Adjudicating Authority.  Accused midshipmen do not normally have a right to have counsel present during the hearing.  Counsel will only be permitted in a hearing in extremely unusual circumstances, and all requests must be approved by the Deputy Commandant of Midshipmen.  A request to have counsel present in a hearing should be submitted to the Adjudicating Authority, via the Legal Advisor, with sufficient time to permit substantive review of such request prior to commencement of the hearing.  The accused midshipman may consult with military counsel from Defense Service Office North (DSO), at no cost, or seek civilian counsel at their own expense.

(2) Right to Testify or Remain Silent.  No adverse inference will be drawn from a midshipman's decision to remain silent.  Remaining silent will not prevent the accused midshipman from questioning or cross-examining witnesses.  If a midshipman chooses to make a statement during the hearing concerning a particular offense, the midshipman is expected to answer all questions the Adjudicating Authority may have concerning that offense.  If the midshipman fails to do so by later invoking their right to remain silent, the Adjudicating Authority, at their discretion, may disregard any or all prior statements made by the midshipman

Ex. H

at the adjudication relative to the offense(s).

(3) Right to Inspect Evidence.  The Commandant's Conduct Officer or the Battalion XO of the accused will ensure that the accused midshipman has a reasonable opportunity to review all evidence that may be considered by the Adjudicating Authority prior to the hearing.

(4) Right to Object.  Prior to or during the hearing, the accused midshipman may object to evidence to be considered by the Adjudicating Authority.  The accused must provide a basis for the objection.  The Adjudicating Authority is strongly encouraged to consult with the Legal Advisor prior to ruling on an objection.

(5) Right to call reasonably available witnesses and be notified of witnesses scheduled to be called by the Adjudicating Authority.  The Adjudicating Authority may call additional witnesses not previously scheduled if new information is discovered at the adjudication which makes the testimony of such additional witnesses necessary.

(6) Right to present evidence in defense, mitigation, and extenuation.

(7) Right to present an oral and/or written argument in support of his or her defense.

h.  Witnesses.  Adjudicative hearings are intended to be non-adversarial.  As such, the Adjudicating Authority need not necessarily call witnesses to establish the facts and circumstances regarding cases unless witnesses are requested by the accused midshipman, have relevant testimony to provide, and are reasonably available.  Regardless of witness inputs, the Adjudicating Authority may rely solely upon documentary evidence to find a midshipman guilty of the offense(s) charged.  In the event witnesses are called by the Adjudicating Authority, the following shall apply:

(1) Non-USNA faculty/staff civilians who agree to appear will do so at their own expense. The Adjudicating Authority may use any reasonable method to obtain statements of witnesses including telephonic interviews and written statements.  The Adjudicating Authority should inform the witness of the nature of the inquiry before their testimony is taken and protect them from improper questions, harsh or insulting treatment, and unnecessary inquiry into their private affairs.

(2) The Adjudicating Authority will direct that military and civilian witnesses who are subject to Navy authority not discuss their statement or testimony with other witnesses or with persons who have no official interest in the proceedings until the case is closed.  The Adjudicating Authority will request the same from other witnesses not subject to Navy authority.

i.  Observers.  At the Adjudicating Authority's discretion, midshipmen may observe conduct adjudications for educational purposes.  In general, midshipmen who have a familiar relationship with any midshipman associated with the case shall not be observers.  The Midshipmen Conduct Officer is responsible for:

(1) Seeking permission from the Adjudicating Authority for observers to be present prior to each adjudication.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

(2) Seeking guidance on the number and kind of observers (e.g., out of company MIDN only) allowed at the adjudication.

(3) Organizing the observers for the adjudications.

j.  Adjudicative Hearing Process.  The following format should be followed during all adjudicative hearings:

(1) The accused midshipman will report to the Adjudicating Authority by stating name and rank.

(2) The accused midshipman will be provided the opportunity to review any new evidence that was forwarded to the Adjudicating Authority.

(3) The accused midshipman will be informed of the charged offense(s) and instructed to enter a plea to each charge.  Failure to enter a plea will be deemed to be a plea of "not guilty."

(4) The accused midshipman will be informed of their right to remain silent and to present witnesses and evidence on their own behalf.  The accused midshipman or the Adjudicating Authority may call relevant witnesses to testify on the merits of the accusation if documentary evidence alone does not adequately establish the facts necessary to make a finding.

(5) The accused midshipman will be given an opportunity to present up to three-character witnesses to speak on their behalf.  These witnesses should be members of the Brigade or the USNA faculty/staff.  Any other character witnesses should be approved by the Commandant's Conduct Officer or Legal Advisor before appearing at a hearing.

(6) During the hearing, if the Adjudicating Authority suspects or identifies that additional uncharged misconduct was committed:

(a) the Adjudicating Authority shall notify the accused midshipman of the uncharged misconduct prior to asking any further questions once the uncharged misconduct is suspected. The Adjudicating Authority shall also remind the accused midshipman about the right to remain silent at the adjudication.

(b) if the uncharged offense is one for which the Adjudicating Authority would be a normal adjudicating authority per 3.3(a) and the Adjudicating Authority believes the evidence presented at the hearing proves by a preponderance of the evidence that the misconduct occurred, then the Adjudicating Authority shall notify the accused of the additional charge, give the accused an opportunity to offer additional evidence, and make a determination as to whether the accused is guilty of the additional charge.

(c) if the uncharged offense is a higher level offense than for which the Adjudicating Authority would be a normal adjudicating authority per 3.3(a) or the Adjudicating Authority believes that further investigation is necessary into the suspected misconduct, then the Adjudicating Authority shall recess the hearing without issuing any findings in the case and promptly refer the matter to the Commandant's Conduct Officer.

(d) if the uncharged offense is an honor offense arising out of the same course of

Ex. H

conduct as the charged misconduct, then the Adjudicating Authority shall recess the hearing without issuing any findings in the case and promptly refer the matter to the Commandant's Conduct Officer and the Honor Officer.

(e) if the uncharged offense is an honor offense arising out of statements made to the investigating officer or to the Adjudicating Authority during the adjudication, then the Adjudicating Authority shall warn the accused of the suspected honor offense and remind them of their right to remain silent at the adjudication; however the Adjudicating Authority may complete the adjudication and award sanctions. After the adjudication, the Adjudicating Authority may refer the matter to the Honor Officer.

(7) If it is determined that the accused midshipman is not the only midshipman involved in the incident and it appears that other midshipmen should be charged for their actions, the Adjudicating Authority may choose from the following two options:

(a) Hold the adjudication in abeyance. If the Adjudicating Authority suspects that further investigation may reveal information which could affect the finding for the accused midshipman, the case shall be reopened for further investigation.

(b) Continue the adjudication. If the Adjudicating Authority does not suspect that further investigation will significantly affect the finding for the accused midshipman, the adjudication may continue and an investigation should be opened following the adjudication to determine the involvement of the other midshipmen.

(8) If a determination of guilt is reached, extenuating and mitigating circumstances will be considered prior to awarding sanctions. Following the awarding of sanctions, the Adjudicating Authority will ensure the guilty midshipman fully understands the sanctions that have been awarded.

k. Records. The Adjudicating Authority for all Major-level and 6k-level offenses shall record the awarded sanctions on the Sanctions Worksheet (TAB F). This worksheet shall be included in the adjudication package.

l. Post-Adjudication Procedures

(1) Minor-level Offenses. Immediately following the adjudication, the entire adjudication package will be given to the Company Conduct Officer who will update the Form-2 in MIDS to reflect the completion of the adjudication and awarded sanctions. If applicable, the Company Officer will also ensure the adjudicated midshipman reports to Main Office to fill out the Midshipman's Acknowledgement and Award of Restriction Form (TAB G) on the day of award. The original form is to be maintained by the adjudicated midshipman, and a copy of it shall be provided to the Commandant's Conduct Officer. A Restriction Card (TAB H) will also be filled out in Main Office at the same time. The Company Conduct Officer will ensure restriction begins immediately following the adjudication, or if deferred, on the day to which restriction was deferred. The entire adjudication package will remain with the midshipman's performance jacket in company area.

(2) Major-level Offenses. Immediately following the adjudication, the entire adjudication package will be given to the Battalion Conduct Officer who will update the Form-2 in MIDS to

Ex. H

reflect the completion of the adjudication and awarded sanctions. The adjudication package will then be immediately forwarded to the Commandant's Conduct Officer. If applicable, the Battalion Conduct Officer will also ensure the adjudicated midshipman reports to Main Office to fill out the Midshipman's Acknowledgement and Award of Restriction Form (TAB G) on the day of award. The original form is to be maintained by the adjudicated midshipman, and a copy of it shall be provided to the Commandant's Conduct Officer in the adjudication package. A Restriction Card (TAB H) will also be filled out in Main Office at the same time. The Battalion Conduct Officer will ensure restriction begins immediately following the adjudication, or if deferred, on the day to which restriction was deferred.

**NOTE:** If the Battalion Officer delegates a Major-level offense to a Company Officer to adjudicate, the Company Conduct Officer shall be responsible for complying with this paragraph.

        (3) 6K-level Offenses (and any offense(s) adjudicated by the Deputy Commandant of Midshipmen or Commandant of Midshipmen). Immediately following the adjudication, the Commandant's Conduct Officer will update the Form-2 in MIDS and compose a conduct probation letter if conduct probation was recommended/awarded (TAB I). If applicable, the Brigade Conduct Officer will ensure the adjudicated midshipman reports to Main Office to fill out the Midshipman's Acknowledgement and Award of Restriction Form (TAB G) on the day of award. The original is to be maintained by the adjudicated midshipman and a copy of it shall be provided to the Commandant's Conduct Officer. A Restriction Card (TAB H) will also be filled out at the same time. The Brigade Conduct Officer will ensure restriction begins immediately following the adjudication, or if deferred, on the day to which restriction was deferred. The entire adjudication package will be forwarded to the Commandant's Legal Advisor for filing or further processing. The Brigade Conduct Officer will ensure the adjudicated midshipman writes their corresponding XYZ case. The Brigade Conduct Officer shall not require XYZ cases to be written for conduct cases in which the CMEO Officer or Sexual Assault Prevention and Response (SAPR) Program Manager are involved.

## 3.4   Request for Reconsideration (Appeal)

    a. A Request for Reconsideration is an appeal to a Reviewing Authority.

        (1) Reviewing Authorities are as follows:

            (a) Commandant - for offenses adjudicated by the Deputy Commandant of Midshipmen.

            (b) Deputy Commandant of Midshipmen - for Major-level offenses adjudicated by subordinates and any offenses adjudicated by a Battalion Officer.

            (c) Battalion Officer - for Minor-level offenses adjudicated by subordinates.

        (2) A midshipman may appeal the disposition of their case only on the following bases:

            (a) A finding of guilt is unjust.

            (b) The sanctions awarded are disproportionate to the offense(s) committed.

Ex. H

(c) Substantial errors existed in the adjudicative proceedings which substantially prejudiced the accused midshipman and cannot be subsequently cured.

b.  Appeal of a Guilty Finding.  Only midshipmen who plead "not guilty" may request reconsideration of a finding of "guilty."  An appeal will need to indicate that there was not sufficient evidence to substantiate the charge by a preponderance of the evidence.

c.  Appeal of the Awarded Sanctions.  Regardless of plea, any midshipman who considers the awarded sanctions disproportionate to the offense(s), may request reconsideration of the award itself.  Such an appeal should address whether the level of the original sanctions awarded was an abuse of discretion under the circumstances of a given case.  Awarded sanctions should not be changed simply because the Reviewing Authority would have awarded different sanctions.

d.  Appeal Based on Errors or Irregularities in an Adjudicative Hearing.  Procedural errors or irregularities in adjudicative hearings will be grounds to invalidate such proceedings only in those cases where the errors or irregularities substantially prejudiced the accused midshipman and cannot subsequently be cured.  If substantial errors in the proceedings are detected, the Reviewing Authority may direct that the investigation be reopened and additional matters be considered or that errors be corrected or remedied.  The accused midshipman is responsible for alleging substantial errors within the time period described in paragraph 3.4e(4) below.  Irregularities not amounting to the above will be considered harmless errors and will not be a basis to reevaluate.  If a harmless error in the proceedings is detected, the Adjudicating Authority shall take steps as required to remedy such error, so long as the rights of the accused midshipman are not substantially prejudiced.

e.  Rules for Submitting Requests for Reconsideration.

(1) Midshipmen must serve awarded sanctions while making a request for reconsideration unless the sanctions, or any relevant portion thereof, is suspended by the Reviewing Authority.

(2) Requests for reconsideration shall be in writing and must include the appellant's reasons for regarding the sanctions as disproportionate or the guilty finding unjust.

(3) All requests for reconsideration must be routed through the Adjudicating Authority via the chain of command, Commandant's Conduct Officer, and Legal Advisor before being forwarded to the Reviewing Authority.  The Commandant's Conduct Officer and the Legal Advisor may make inquiries and examine any additional matter deemed relevant to the proceeding underlying the request, as well as the request itself.  Upon review of whatever material is deemed appropriate, the Legal Advisor will provide advice to the Reviewing Authority.

(4) Time Limits.

(a) Requests for reconsideration must be submitted to the Adjudicating Authority within five working days of the initial adjudication, unless the midshipman receives an extension from the Adjudicating Authority, which must be requested in writing.  Failure to submit a request for reconsideration within the prescribed time limit may result in denial of the appeal.  If

such denial is made, both the findings and awarded sanctions will become final and a permanent part of the midshipman's record, not subject to later appeal or complaint.

(b) If the request for reconsideration is not acted upon within five working days of its receipt by the Adjudicating Authority, the midshipman may request, in writing, that any unserved sanctions that have been designated for review be temporarily suspended until the request is acted upon.  The request may be included within the original reconsideration letter or made by special request chit.

f.  Notice of Reviewing Authority Action.  After review of a request for reconsideration, the Reviewing Authority will inform, in writing, the midshipman and the appropriate Adjudicating Authority of the decision.  The Reviewing Authority will then immediately forward the request and all accompanying paperwork to the Commandant's Conduct Officer and Legal Advisor.

g.  Effect of Failing to Request Reconsideration.  Absent good cause, failure of the accused midshipman to allege error or to otherwise request reconsideration of findings and/or awarded sanctions during an adjudicative hearing within the time period permitted above constitutes a waiver by the midshipman of any claims of error or injustice that may otherwise have been raised.

## 3.5  Unsatisfactory Conduct Procedures

a.  If a midshipman becomes unsatisfactory in conduct as a result of being found guilty at adjudication (or under any circumstance outlined in Chapter 6), that midshipman's overall record will be reviewed by the chain of command, the Commandant's Conduct Officer, and the Legal Advisor.

b.  Record Review.  The Commandant may review the midshipman's entire record (academic, aptitude, conduct, and physical education) and decide from the following options:

(1) No Further Action.  The Commandant will take no action beyond the sanctions already assigned by the Adjudicating Authority.

(2) Formal Verbal or Written Counseling.  The midshipman is counseled by the chain of command regarding the unsatisfactory conduct and the appropriate documentation is included in the midshipman's conduct record and performance jacket.

(3) Placement of Midshipman on Conduct Probation and/or Remediation.  The Commandant may assign conduct probation and/or remediation in a written letter delineating the terms of successful completion.  The Commandant may choose to have a meeting with the midshipman and the midshipman's chain of command and personally deliver the letter or have the letter separately served on the midshipman.

(4) Commandant's Hearing for Unsatisfactory Conduct.  The Commandant shall consider the information provided during the hearing, the midshipman's prior conduct record, and the midshipman's overall suitability for commissioning.  The Commandant may, at their sole discretion, take one of the following courses of action at the conclusion of such hearing:

Ex. H

(a) No Further Action.  Appropriate documentation is included in the midshipman's performance record.

(b) Placement of midshipman on conduct probation and/or remediation.

(c) Recommendation for separation.

(5) Forward for Review under the Aptitude System.  The Commandant may direct the chain of command to convene an appropriate Aptitude Board to review the midshipman's overall record.  Forwarding the midshipman to an Aptitude Board does not in any way restrict other options in the Conduct System as detailed above.

## 3.6  **Separation Procedures**

a. Commandant Action.  If the Commandant recommends a midshipman for separation from the Naval Academy, the following will occur:

(1) A summary of the Commandant's hearing will be prepared by the Legal Advisor.

(2) A memorandum recommending separation will be prepared and forwarded to the Superintendent explaining the basis for the recommendation.  All documents relied upon during the hearing by the Commandant, including a record of the Commandant's hearing, will be forwarded with the Commandant's memorandum.

(3) The midshipman will be afforded an opportunity to review the Commandant's memorandum and all enclosures prior to any hearing with the Superintendent.  The midshipman will be provided a copy of the Commandant's memorandum.

b. Superintendent Action

(1) Separation by Superintendent.  If the Superintendent concurs with the Commandant's recommendation for separation, whether as a result of a hearing or record review, the midshipman will be advised of the decision in writing, and further advised of their right to submit a statement to the Secretary of the Navy showing cause why they should be retained at the Naval Academy.  The Superintendent's Staff Judge Advocate shall ensure that the midshipman is advised of all rights regarding their potential separation from the Naval Academy.  Unless otherwise authorized to do so, midshipmen recommended for separation by the Superintendent may not begin checking out until a Show Cause Statement has been waived or submitted.  Requests to begin the check-out process at any other time must be made via the chain of command and Legal Advisor by special request chit.

(2) Retained within Brigade by Superintendent.  If a midshipman is forwarded to the Superintendent with a recommendation for separation by the Commandant, and the Superintendent decides to retain the midshipman within the Brigade, the Commandant may subsequently take the following actions:

(a) No further action.

(b) Placement of midshipman on conduct probation with or without loss of privileges and/or remediation.

## 3.7  Miscellaneous Considerations

a.  Self-Incrimination.  Neither the accused midshipman nor any witness, civilian or military, will be compelled to:

(1) Incriminate themselves under the UCMJ.

(2) Answer any questions or make a statement which might tend to incriminate themselves.

b.  Involuntary Admissions.  A midshipman's confession or admission, if obtained by unlawful coercion or inducement likely to affect its truthfulness, will not be considered as evidence.  The fact that an accused midshipman was not advised of their rights under Article 31(b), UCMJ, the Fifth Amendment of the United States Constitution, or the rights granted under these procedures before a confession or admission was made does not, in itself, prevent acceptance of the confession or admission as evidence.  The Adjudicating Authority may accept and consider such an admission or confession, so long as they determine the admission or confession was not coerced, solicited by an investigator ignoring the requirements of Article 31(b) whether by intent or gross negligence, or otherwise secured under circumstances that would undermine its truthfulness or accuracy.

c.  A person declining to answer a question during an adjudication on the basis of Article 31(b) or Constitutional grounds must specifically state so.  Whenever it appears appropriate and advisable to do so, the rights of a witness or the accused midshipman should be explained by the Adjudicating Authority.

d.  Unlawful Searches.  If a member of the Armed Forces, acting in an official capacity, conducts or directs a search which is unlawful pursuant to the provisions of the Fourth Amendment of the United States Constitution as applied to the military community or which is not permitted under applicable regulations, the evidence so obtained will not be considered against the midshipman whose rights were violated.  In all other cases, evidence obtained as a result of any search or inspection may be accepted.

Ex. H

# CHAPTER 4

## DISCIPLINARY MEASURES:  RULES AND EXPLANATIONS

### 4.1  Levels of Disciplinary Measures

   a.  The Table of Authorized Sanctions provides guidance to Adjudicating Authorities for the administration of equitable discipline within the Brigade of Midshipmen while permitting them to exercise discretion in individual cases.

<div style="border:1px solid">

### TABLE OF AUTHORIZED SANCTIONS

|  | Minor | Major | 6K |
|---|---|---|---|
| Demerits | 0-50 | 0-90 | 0-100 |
| Restriction (days) | 0-21 | 0-45 | 0-60 |
| Tours[1] | 0-10 | 0-20 | 0-30 |
| Extra Duties (days) | 0-30 | 0-60 | 0-90 |
| Loss of Privileges[2,3] (months) | 0-2 | 0-4 | 0-6 |

NOTES:

1.  Tours may be assigned only if restriction is not assigned.  Tours will be marched daily at 1900 with restrictees following restriction muster and tracked by both the Company Conduct Officer and Main Office.  An Adjudicating Authority may not assign both tours and restriction for an offense.

2.  The Commandant may suspend privileges in excess of this range in appropriate cases.

3.  For limits and guidance with respect to suspending or revoking parking and driving privileges, see section 4.5(h).

</div>

Table 4-A

   b.  Not every offense should necessarily result in the award of the maximum possible sanctions.  The philosophy of the system maintains that delinquencies and resultant awards should be handled at the lowest appropriate level consistent with good order and discipline.  In some cases, justice may be better served if the Adjudicating Authority, using appropriate discretion, reduces a Minor-level offense to Form-1 counseling rather than assigning sanctions based upon a Form-2.

   c.  A midshipman who violates the same delinquency code during the same academic year normally should be awarded higher sanctions with each subsequent violation.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**4.2  <u>Suspension of Awarded Sanctions</u>.**  Awarded sanctions may be suspended either entirely or in part by the Adjudicating Authority for a period not to exceed six (6) months.  The amount of sanctions suspended and the exact length of the suspension must be clearly documented in the Form-2.  Suspended sanctions will be served only if the midshipman violates a condition of the suspension announced at the adjudication.  An automatic condition of suspension, which does not require announcement, is that the midshipman may not commit any subsequent conduct or honor offenses.  The awarding authority or a superior awarding authority may vacate a suspension of sanctions based on a probable cause finding that a condition has been violated.  A hearing is not required to vacate a suspension; however, the vacating authority should provide the midshipman a reasonable opportunity to present matters in defense, mitigation, or extenuation prior to vacating a suspension of sanctions.  If not previously vacated, suspended sanctions will automatically become effective upon a guilty finding at a subsequent adjudication during the suspension period.  If a minimum sanction is prescribed by this instruction, no portion of the minimum sanction may be suspended unless approved by the Deputy Commandant of Midshipmen.

**4.3  <u>Deferment of Restriction or Tours</u>**.  Midshipmen with extraordinary circumstances may request to defer restriction (i.e., serve awarded restriction at a later date), this does not include matters of desire or convenience unless denying said request would produce a physical or financial hardship.  The Adjudicating Authority may defer restriction immediately within the hearing or at a later date as the result of an approved special request chit.  The Form-2 must be annotated and Main Office must be notified if restriction is deferred for any reason.  Restriction will be automatically deferred or postponed for approved movement orders or summer training assignments.  These automatic deferments will be tracked in Main Office on the 0800 report.

**4.4  <u>Types of Sanctions</u>**

   a.  Demerits.  Demerits are numerical points awarded when a midshipman is found guilty of a conduct offense.  A midshipman's semester conduct grade results solely from the total number of demerits accumulated during that semester.  Demerit ranges for each category of offense are listed in Table 4-A.  A full explanation of demerits and their function within the Conduct System is presented in Chapter 6.

   **b.**  Restriction.  Restriction is an order directing a midshipman to remain within specified physical limits under specified conditions as delineated below.  Restriction ranges for each category of offense are listed in Table 4-A.  Restriction is tracked by Main Office via a Restriction Card (TAB H) and on the 0800 report.

      (1) Midshipmen on restriction are prohibited from:

         (a) Town or weekend liberty.

         (b) Exiting the confines of the Naval Academy for anything other than a legitimate sports team practice.  This includes travel to Naval Support Activity Annapolis for any reason except legitimate sports team practice.

         (c) Signing out of a restriction muster for any activity lower in priority than restriction.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

(d) Consuming alcohol.

(2) Midshipmen on restriction shall:

(a) Attend all restriction musters and perform all assigned duties unless they are required to attend an event listed higher on the Table of Priorities in MIDREGS.

(b) Be restricted to company area, except when attending musters, standing duty, and during authorized excusals.  Authorized excusals include academic classes, use of academic facilities when required to complete academic projects, religious events within the Yard, physical training, and varsity, club, or intramural activities.  Other possible excusals must be cleared via the Officer of the Watch (OOW) prior to absence.

(c) Sign out in Main Office immediately prior to authorized excusals and sign in immediately upon completion.  Midshipmen do not need to sign out for class, military drill, or mandatory meals.

(d) Wear an inspection-quality uniform of the day (Service Dress Blues or Summer Whites for restriction musters) at all times, except during PT or while sleeping.  Blue over khaki is not an acceptable working uniform for restrictees.  The only instances where blue over khaki is an appropriate uniform for a restrictee is if they are performing flight-line duties associated with the Powered Flight Program or Sailing activities (to include OSTS and VOST).

(e) Be in a restricted status immediately following the adjudication in which restriction is awarded unless specifically deferred by the Adjudicating Authority.

(f) Be considered in a duty status throughout their time on restriction.

(3) Miscellaneous Guidelines for Restriction

(a) Midshipmen in a restricted status will muster daily, Monday through Saturday at 1900 and Sundays at 1300, to march a tour.  Other restriction musters will be held throughout the day per sub-paragraphs (8) through (12) below, and as announced by the OOW.  Friday-Sunday and during any other designated holidays, leave periods when classes are not in session or between Graduation and Fall Semester Reform, restricted midshipmen will muster five times per day, according to the schedule below.

(b) Midshipmen who are sick in quarters (SIQ) are excused from restriction musters only with a legitimate SIQ chit from Brigade Medical which has been countersigned by their Company Officer or Senior Enlisted Leader.  Midshipmen shall not be penalized for missing musters when SIQ, however restriction days will not count during SIQ.

(c) A midshipman may not be placed on restriction before a finding of guilt and awarding of sanctions unless so placed by the Commandant or the Deputy Commandant of Midshipmen.  The midshipman will receive day-for-day credit if restriction is subsequently awarded for the offense.  Midshipmen shall not receive any credit for restriction served voluntarily prior to the awarding of restriction at an adjudication.

(d) Restriction periods which end on a non-leave day terminate at 2359.  Restriction

Ex. H

periods which end on a leave day terminate at 1300. The terminal day continues to count as a full day of restriction. This is to mitigate travel risk.

(e) During the summer, restriction musters will occur five (5) times a day, every day. If a restricted midshipman is participating in summer school, they shall sign out of restriction in the restriction log when they leave for class and sign in when they return from class.

(f) All musters must be accounted for by each midshipman, beginning with the muster immediately following the awarding of restriction, whether via attendance or properly authorized excusal. However, a restricted midshipman must attend at least one muster on days with three scheduled musters, two on days with four scheduled musters, or three on days with five scheduled musters, in order for that day to count, regardless of excusals as noted above. Special circumstances will be considered for credit by the OOW and the Conduct Officer, in consultation with the Deputy Commandant of Midshipmen. In all cases, each midshipman is required to meet all restriction requirements, independent of any excusals, for a day to count; this means, for example, if a midshipman is excused from one muster during the day, they must attend all other musters for the day to count, not just the minimum number as noted above.

(g) If a restricted midshipman attends the minimum number of musters per the previous paragraph on the day on which restriction is awarded, that day counts as a full day of restriction. However, if a midshipman is adjudicated on a day with five scheduled musters and the adjudication was completed after three of the musters have been held, that day of restriction will still count as a full day of restriction if the midshipman attends the remaining two musters. (If the midshipman is excused from any of the remaining musters for that day, then that day shall not count.)

(h) During Academic Reserve, Reading Days, and Final Examinations, midshipmen in a restricted status will muster daily at 1900 and march a tour. For those midshipmen who have a Final Exam at 1930, they will be excused from marching a tour but are still required to muster at 1900 in order for the day of restriction to count.

(4) Violation of Restricted Status. Violation of restricted status in any manner (late, UA, consumption of alcohol, out of uniform, sleeping, etc.) will be processed as follows:

(a) A Form-2 will be initiated charging offense 07.07. If alcohol was consumed, offense 05.11 and 05.08 will also be charged.

(b) The offense shall be annotated on the 0800 report and on the midshipman's restriction card.

(c) That day of restriction will not count as a day served.

(d) The minimum sanction for violating restriction is five (5) days of restriction for the first occurrence and fifteen (15) days of restriction for a second occurrence. If the first two occurrences are completed prior to an adjudication for the first occurrence, the case shall be heard as a single case with a minimum sanction of twenty (20) days. Any occurrence after the second occurrence during a period of restriction shall be charged at least as a Major-level offense.

(5) Restriction During Leave Periods. All restricted midshipmen, regardless of class, will

serve restriction during leave periods.  Extra credit will not be given for restriction served during a leave period.  Midshipmen on restriction during a leave period are not allowed a break in restriction unless specifically authorized by the Adjudicating Authority or in a Commandant's Notice and approved by the Company Officer.  Holiday restriction guidelines will be promulgated via a Commandant's Notice.

(6) Restriction Leading to Late Graduation.  Only the Superintendent may authorize late graduation.  The Superintendent will consider all cases of 1/C Midshipmen with outstanding restriction as soon as practicable starting during the spring academic boards.

(7) Brigade-Wide Restriction.  The Commandant may restrict the entire Brigade of Midshipmen, or any portion thereof, for incidents of widespread misconduct.

(8) Restriction Schedule (Monday-Thursday during the academic year, Tuesday-Thursday following three-day weekends during the academic year).

0630 - Restriction muster in Smoke Hall in SDBs or Whites.

1300 - Restriction muster in Smoke Hall in SDBs or Whites.

1900 - Muster in Smoke Hall in working uniform with issued rifle.
        Tours will commence at 1915 and be complete by 2000.

(9) Restriction Schedule (Friday on class days during the academic year).

0630 - Restriction muster in Smoke Hall in SDBs or Whites.

1300 - Restriction muster in Smoke Hall in SDBs or Whites.

1630 - Restriction muster in Smoke Hall in SDBs or Whites.

1900 - Muster in Smoke Hall in working uniform with issued rifle.
        Tours will commence at 1915 and be complete by 2000.

2230 - Restriction muster in Smoke Hall in SDBs or Whites.

(10) Restriction Schedule (Saturday all year, Monday-Friday during non-class days and between Graduation and Fall Semester Reform).

0630 - Restriction muster in Smoke Hall in SDBs or Whites. 1300

- Restriction muster in Smoke Hall in SDBs or Whites. 1630 -

Restriction muster in Smoke Hall in SDBs or Whites. 1900 -

Muster in Smoke Hall in working uniform with issued rifle.
        Tours will commence at 1915 and be complete by 2000.

2230- Restriction muster in Smoke Hall in SDBs or Whites.

(11) Restriction Schedule (Sunday or Monday with End of Liberty Formation during the academic year).

0630 - Restriction muster in Smoke Hall in SDBs or Whites.

1300 - Muster in Smoke Hall in working uniform with issued rifle.
        Tours will commence at 1315 and be complete by 1400.

1630 - Restriction muster in Smoke Hall in SDBs or Whites.

1900 - Restriction muster in Smoke Hall in SDBs or Whites.

(12) Restriction Schedule (Sunday for three-day weekends, leave periods, and between Spring Semester final exams and Fall Semester Reform).

0630 - Restriction muster in Smoke Hall in SDBs or Whites.

1300 - Muster in Smoke Hall in working uniform with issued rifle.
        Tours will commence at 1315 and be complete by 1400.

1630 - Restriction muster in Smoke Hall in SDBs or Whites.
1900 - Restriction muster in Smoke Hall in SDBs or Whites.

2230 - Restriction muster in Smoke Hall in SDBs or Whites.

(a) The OOW may authorize additional surprise musters and duty requirements as necessary on any day of the week.  Notification for an unscheduled event should be announced via the 1MC at least 10 minutes prior to the event.

(13) Restriction Musters

(a) When the restriction muster formation is called to attention, any restricted midshipman not in formation at that time will be marked absent.  Midshipmen will not be marked present if they arrive late for muster, regardless of the reason.  Restriction muster formation will not be called to attention prior to the scheduled time.

(b) Approximately five minutes prior to restriction muster, the Midshipman Officer of The Watch (MOOW) and Senior Restrictee will review the restriction cards and ensure that there are no erroneous or extraneous entries.  The Senior Restrictee will then go to the muster area to take accountability.

(c) Midshipmen will be inspected in ranks at every muster by the OOW or Special Duty Officer.  Only after the inspection will their attendance at the muster be noted on the restriction card.  Midshipmen who are judged to be unsatisfactory in personal appearance at any restriction muster will not receive credit for standing restriction that day and will be handled as stated in section 4.4b.(4) "Violation of Restricted Status;" however, the midshipmen are expected to attend all further musters that day, regardless of credit.

(d) The Senior Restrictee shall act as Restriction Commander for the purpose of accountability at restriction musters.  They will be held accountable for proper reporting of the restrictees.  No midshipman forwarded for separation to the Superintendent will stand as the Restriction Commander.

(e) Special Permission to miss Restriction Muster.  A restricted midshipman must ensure that they personally sign the restriction sign-out log if they will miss a muster for any authorized reason.  Upon completion of the activity, the restricted midshipman will personally sign in with a return time and return to their company area.  Midshipmen are prohibited from signing the restriction log for anyone but themselves.  The OOW may, in consultation with the Deputy Commandant of Midshipmen when practicable, grant permission for a midshipman to miss a restriction muster for a reason other than those listed in  Midshipman Regulations (MIDREGS).  Such excusals should be made in special circumstances when necessitated by critical academic, military, or personal requirements—unique opportunities which other midshipmen performing duties (i.e. watch standing) will miss, such as a guest speaker, do not normally meet this criterion.

(f) At the conclusion of muster, the MOOW will return to Main Office and initial the cards of those members who were present at the muster.  Once this is completed, the MOOW will compare the cards of those restrictees who were not present against the restriction sign-out log.  All restrictees who are not signed out and not present at the muster will be marked Unauthorized Absence (UA) on their cards and the MOOW will generate a Form-2 for the UA midshipman.

## 4.5  Other Disciplinary Measures

a. Tours

(1) All restrictees will muster in Smoke Hall daily, at 1900 Monday through Saturday and at 1300 on Sundays, and march a tour.  Tours shall be marched on red beach between 4th and 6th wings of Bancroft Hall or in a comparable area as designated by the OOW. A 1/C midshipman, appointed by the MOOW, will supervise the tour to ensure no talking, music, or inappropriate behavior exists.  Varsity athletes on game day and midshipmen who are on "no drill" chits will not march, but will muster and supervise tours.

(2) Any midshipmen assigned tours who are not in a restricted status will muster with the restrictees at 1900 or 1300, daily, as appropriate, and march a corresponding tour until all assigned tours are completed.  Tours shall be marched every day, without exception, unless the midshipman has a valid excuse approved by the OOW.

b. Extra Duty and Extra Military Instruction.

(1) Extra duty may be awarded as the result of a Form-2.  A description of the award should be entered into the [Counseling Comment] section of the Form-1 or into the [Award Comment] section of the Form-2.  Specified extra duty may include, but is not limited to:

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

-Extra Watch                          -Mess Hall Duty
-1st LT Duties                         -Laundry Duty
-Planning / Organizing Functions      -Room Inspector
-Uniform monitor

(2) All Restrictees Subject to Extra Duties as Needed.  Restrictees are subject to extra duties as directed by the OOW.  Extra duty shall be performed on a not-to-interfere basis with other military obligations such as academic classes, drill, intramurals, study hour, and mandatory lectures.  Extra Duties must be directly related to command benefit vice a smaller portion of the command.

(3) Reduction of Restriction for Extra Duty.  Days of restriction should not be reduced in exchange for the performance of extra duty except under extraordinary circumstances.  Only the Commandant or Deputy Commandant of Midshipmen may reduce days of restriction.  Requests for reduction of restriction for performance of extra duty in extraordinary circumstances will be submitted to the Commandant's Conduct Officer.

(4) Extra military instruction (EMI) is a training tool that attempts to improve an individual's performance by focusing additional effort on some deficiency.  EMI may be assigned with either a Form-1 or Form-2.  EMI must be logically related to the deficiency in performance documented in the Form-1 or Form-2 (e.g., if a midshipman is late for watch then EMI may include extra watch; if a midshipman is not wearing their uniform properly then EMI may include being a uniform monitor; however, if a midshipman is late for watch then laundry duty is not be appropriate EMI).  EMI normally should not be conducted for more than two hours per day.  EMI must cease once the deficiency is corrected.  EMI cannot be the sole basis to delay or deprive normal liberty authorized under MIDREGs.  EMI may be awarded by 1/C Midshipmen in leadership positions after consultation with the appropriate Company Officer or Senior Enlisted Leader.  The awarding of EMI does not preclude subsequent sanctions using a Form-2 for misconduct revealing a deficiency which was the basis for the EMI.

c.  Loss of Privileges

(1) Adjudicating Authorities may revoke class privileges, but shall specify which class privileges are being revoked.  A midshipman who loses privileges shall continue to wear the uniform and insignia of his or her class.  Any class privilege that is revoked shall not impact the midshipman's academic progress, pay, or other such administrative matters.  The following privileges may be revoked by appropriate awarding authorities:

| LOSS OF PRIVILEGES: | APPLICABLE TO: |
|---|---|
| Overnight liberty | 1/C, 2/C, 3/C, 4/C |
| Weekday town liberty | 1/C |
| Civilian attire during liberty | 1/C, 2/C, 3/C |
| Wearing "spirit gear" in Bancroft Hall | 1/C, 2/C, 3/C |
| Physical training during study period | 1/C, 2/C, 3/C |
| Operating a vehicle on board USNA | 1/C, 2/C (move in/out) |
| Operating a vehicle w/in 35 Miles of USNA | 1/C, 2/C |
| Parking onboard USNA | 1/C |

Ex. H

| Move out of Bancroft after Spring Finals | 1/C |
|---|---|
| Weekend media utilization for entertainment | 4/C |

Table 4-B

(2) In the event that a midshipman fails to adhere to the provisions of this sanction, their case shall be forwarded to the Commandant by the original Adjudicating Authority for further consideration.

(3) Any midshipman who is forwarded with a recommendation for separation will automatically lose all class privileges until the next hearing in the case.  However, the adjudicating authority may waive the loss of any or all privileges when making the recommendation for separation.  If the midshipman is retained at a subsequent hearing, any further loss of privileges must be specifically awarded.  Any period of automatic loss of privileges will count towards the total amount of loss of privileges that is ultimately awarded.

(4) If loss of privileges extends into the next class year (e.g., 3/C to 2/C), the midshipman shall also lose any new privilege based on the new class as identified in Table 4-B, unless waived by the Awarding Authority, successor, or higher authority.

d.  Removal from Sports/Extracurricular Activities.  The Commandant may remove members and managers from varsity teams, club teams, or other extracurricular activities for misconduct.  The Commandant may suspend midshipmen from any or all team or group activities including meetings, practices, training, competition, social functions, or any other involvement.  The Commandant may place a midshipman in a "non-representation" status, meaning the midshipman is prohibited from traveling with a team or activity and from representing the Naval Academy as part of that team or activity for the time period set forth by the Commandant; however, the midshipman may still attend practices and meetings during that time.

e.  Removal from Leadership Position.  The Commandant may remove a midshipman from a leadership position within the Brigade.

(1) Any midshipman striper who has demonstrated an inappropriate sense of duty may be recommended for striper rank reduction.  Recommendations for reduction on the Battalion, Regimental, or Brigade level will be made by letter through the midshipman's Battalion Officer and the Deputy Commandant of Midshipmen to the Commandant for review/action.  The Superintendent will be advised of all proposed reductions of senior (four-stripers and above) members of the Brigade staff.

f.  Deprivation of Normal Liberty.  Deprivation of normal 4/C liberty as a sanction is not authorized unless it is the result of restriction.  Deprivation of normal upper class liberty may be administered only by the Company Officer or the Company Officer's superior in the chain of command for a period of time within the ranges applicable to "Loss of Privileges" in Table 4.1.

g. Loss of Leave.  The Commandant may suspend a midshipmen's ability to take leave for a period not to exceed six (6) months.  The midshipman will not be eligible for regular or special leave during that period, unless an exception is granted by the Commandant.  The midshipman

Ex. H

will continue to be eligible for emergency leave, convalescent leave, and leaves of absence.

h. Automobile Privileges. The Commandant or Deputy Commandant of Midshipmen may suspend or revoke midshipman automobile privileges for an automobile related offense for any period of time at any time (e.g., a midshipman may have their 2/C and 1/C driving and parking privileges revoked during 3/C year). Company Officers may suspend parking privileges for offenses as provided by the notes for offense codes 04.18 and 04.19; however, any suspension awarded exceeding the minimum sanctions prescribed must be approved by the respective Battalion Officer. Any suspension exceeding 180 calendar days must be approved by the Deputy Commandant of Midshipmen.

i. Company Change. The Commandant may order a midshipman to a new company.

j. XYZ Cases (See Section 5.6(e)). Midshipman adjudicated for 6K-level conduct offenses and certain Major-level conduct offenses will be required by the Brigade Conduct Officer to write an XYZ case. XYZ cases that involve CMEO or SAPR issues will only be published when submitted to the Conduct Officer by the CMEO Officer or SAPR Program Manager. XYZ cases are meant to educate the Brigade.

## 4.6  Conduct Probation

a. Conduct probation is a period of heightened scrutiny of a midshipman due to significant conduct issues. Violation of probation may result in a recommendation of separation by the Commandant to the Superintendent.

b. Conduct probation may be awarded by the Commandant:

(1) as a result of a finding of guilt for a 6K-level or Major-level conduct offense at the recommendation of the adjudicating authority or in lieu of a recommendation by the Commandant to the Superintendent for separation,

(2) any time a midshipman's conduct is determined to be unsatisfactory, as defined in Chapter 6,

(3) as a result of retention by the Superintendent following a recommendation for separation, or

(4) at the Commandant's discretion upon a review of the facts of a case.

c. Specific terms and time periods of probation will be established by the Commandant. A midshipman will be notified in writing that they have been placed on probation (TAB I). The probation letter will specifically outline the length of the probationary period and the terms of the probation. Probation letters will be issued by the Commandant's Conduct Officer or the Commandant's Legal Advisor.

(1) The Commandant may impose any number of conditions as part of conduct probation. These include, but are not limited to:

(a) Loss of any or all privileges.

(b) Referral to a conduct remediation program.

(c) Assignment to a different company.

(d) Referral to the Brigade DAPA for screening and/or to the Brigade Alcohol and Drug Education Officer (ADEO) for active participation in the Keep What You've Earned campaign.

(e) Removal or suspension from sports/extracurricular activities or loss of privilege to represent the Naval Academy in any capacity (i.e., non-representation).

(f) Removal from or assignment to a leadership position.

(2) A midshipman on probation may not commit any 6K- level or Major-level conduct offenses or any combination of Minor-level conduct offenses which result in cumulative demerits exceeding the class threshold for unsatisfactory conduct, per Section 6.1.

## 4.7  Separation

a.  The separation authority for midshipmen is determined by SECNAVINST 1531.4 (series). On a case-by-case basis, the Commandant may recommend to the Superintendent that a midshipman found unsatisfactory in conduct be separated from the Naval Academy.

b.  If either the Superintendent or the separation authority disagrees with the recommendation for separation and returns the case to the Commandant, the Commandant may hold an additional hearing regarding unsatisfactory conduct or may immediately place the midshipman on conduct probation with or without loss of privileges and/or remediation, unless otherwise directed.

c.  Once the Superintendent has recommended that a midshipman be separated from the Naval Academy and has signed the endorsement to the midshipman's Show Cause Statement, the midshipman shall immediately begin check-out procedures and will be placed on separation leave pending discharge while awaiting the separation authority's final action.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

# CHAPTER 5

## DUTIES AND RESPONSIBILITIES

**5.1** <u>**Introduction.**</u>  In order for the Conduct System to function efficiently and fairly, specific duties and responsibilities are assigned to members of the Commandant's staff and the Brigade of Midshipmen.  The following are the explanations of those responsibilities by position.

**5.2** <u>**Adjudicating Authority**</u>.  The Adjudicating Authority shall:

a.  Conduct a fair and impartial hearing.

b.  Determine whether the accused is guilty based upon a preponderance of the evidence. Consider all known and relevant circumstances associated with the case.

c.  Determine appropriate sanctions for committed offenses considering the accused midshipman's prior conduct record, overall performance, rank and experience, billet, chain of command input, the need to maintain good order and discipline, and any extenuating or mitigating evidence presented by the accused midshipman.

d.  Advise the accused midshipman, in person, of guilty and/or not guilty findings.  If found guilty, advise the accused midshipman of the extent and nature of the sanctions awarded.  Even if the adjudication is conducted without a hearing, the accused midshipman shall be advised of the Adjudicating Authority's findings and the sanctions awarded.

e.  Following adjudication of a case, provide all related documents to the appropriate Conduct Officer in order to allow entry of the findings and sanctions (if awarded) into the Form-2.

**5.3** <u>**Accused Midshipman**</u>.  The accused midshipman shall:

a.  Obtain legal counsel, if desired.  Although military legal counsel will be made available at no expense to the accused midshipman through Defense Service Office North, the accused midshipman is responsible to make contact with counsel in order to exercise this right, if desired.

b.  Meet submission deadlines established by the Commandant's Conduct Officer or PIO.  If an accused midshipman cannot meet a submission deadline, it is the midshipman's responsibility to contact the appropriate officer in order to obtain an extension.

c.  Be responsible for contacting and notifying witnesses whom they request.

d.  Notify the PIO of any potential alibi defense prior to completion of the preliminary inquiry.  Should the accused midshipman fail to provide information by the appropriate deadline, the Adjudicating Authority may, at their discretion, disregard evidence of alibi offered by the accused midshipman at the adjudicative hearing.

Ex. H

**5.4  Preliminary Investigative Officer (PIO)**

a.  The PIO shall:

(1) Conduct a fair and impartial inquiry into the facts and circumstances surrounding the alleged misconduct.  The PIO should seek assistance from the Commandant's Conduct Officer or Legal Advisor prior to starting their investigation to ensure complete understanding of the case. The PIO should request the assignment of an assistant PIO or legal counsel in more complex cases, if deemed necessary.

(2) When questioning an accused, utilize the Midshipman Suspect's Acknowledgment and Waiver of Rights Form (TAB C), Notification Of Potential Reimbursement For Advanced Education (this pertains to 1/C and 2/C Midshipmen only) (TAB D), and Defense Service Office contact information (available from the Conduct Officer or Commandant's Legal Advisors).

b.  Further instructions for the PIO can be found in Chapter 4.

**5.5  Company/Battalion Conduct Officer**

a.  The Company/Battalion Conduct Officer shall:

(1) Act as a PIO for Minor-level conduct offenses that require the collection of materials or evidence.

(2) Schedule, set up, and attend Minor-level adjudications.

(3) Organize midshipmen observers for Minor-level and Major-level adjudications at the adjudicating authority's discretion.

b.  After adjudication by the assigned Adjudicating Authority the Company/Battalion Conduct Officer shall:

(1) Ensure completion of the following forms associated with sanctions awarded at adjudication:  Midshipman Acknowledgement of Restriction Form (TAB G) and the Restriction Card (TAB H).

(2) For Minor-level cases:  Ensure that the Form-2 is immediately updated in MIDS and the conduct package is filed in the company files.

(3) For Major-level cases:  Ensure that the Form-2 is immediately updated in MIDS and the conduct package is forwarded to the Commandant's Conduct Office for filing or further processing.

**5.6  Brigade Conduct Officer**.  The Brigade Conduct Officer shall:

a.  Assist the Commandant's Conduct Officer in training all Company Conduct Officers to properly execute their respective duties under this instruction.  Additionally, the Brigade

Conduct Officer will train the Battalion and Company Conduct Officers regarding the operation of MIDS as it pertains to conduct offenses.

b.  Act as a liaison between the Conduct Office and Battalion and Company Conduct Officers to enhance consistency in the administration of the Conduct System within the Brigade, thereby enhancing good order and discipline at the Naval Academy.

c.  For Commandant of Midshipmen and Deputy Commandant of Midshipmen adjudications, ensure the accused midshipman and the accused midshipman's midshipman Chain of Command (i.e., Squad Leader, Platoon Commander, Company Commander, Battalion Commander, and varsity sport team captain, if the accused midshipman is a varsity athlete) are prepared for and are confirmed to be present for the adjudication.

d.  Set up the Commandant's Conference room for adjudications and ensure that six (6) observers are present for Commandant of Midshipmen and Deputy Commandant of Midshipmen adjudications/hearings (i.e., one (1) midshipman present from each Battalion, one (1) midshipman present from each class, and one (1) midshipman from the varsity sport team of the accused, if applicable).

e.  Prepare XYZ case studies.  The Brigade Conduct Officer is instrumental in providing feedback to the Brigade of Midshipmen in the form of XYZ case studies which outline cases by describing the summary of events, offenses that were charged, summary of adjudication and sanctions, and the final disposition of the case.  The Brigade Conduct Officer shall:

(1) Assign a due date to the adjudicated midshipman for their XYZ case, ensure the adjudicated midshipman knows to follow the XYZ Case example format posted on the Conduct Website, collect the XYZ case at the time it is due, and edit it prior to submitting it to the Commandant's Conduct Officer for approval.

(2) Ensure Battalion and Company Conduct Officers are alerted when new XYZ cases are posted on the Conduct Website to guarantee widest dissemination of new XYZ cases.

**5.7  Commandant's Conduct Officer**

a.  Prior to forwarding a Major-level conduct offense case to the Adjudicating Authority, the Commandant's Conduct Officer shall:

(1) Ensure that the PIO utilizes the Military Suspect's Acknowledgement and Waiver of Rights Form, Defense Service Office Contact information, and the Notice of Potential Reimbursement as applicable,

(2) Provide assistance to the PIO as necessary, to include obtaining reports from outside agencies.

(3) Coordinate with the PIO to ensure timely completion of the PIR.

(4) Review all available documentation for completeness and accuracy.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

  (5) Forward the PIO to the Commandant's Legal Advisor for review prior to routing to the Deputy Commandant of Midshipmen.

  (6) Ensure the accused midshipman's Company and Battalion Officers are kept informed of investigative and adjudicative proceedings.

 b.  If a hearing to adjudicate a Major-level conduct offense is desired, the Conduct Officer shall:

  (1) Ensure the accused midshipman is notified of the charges contained in the Form-2 and given the opportunity to enter a plea to the charges.

  (2) Provide the accused midshipman an opportunity to review the materials provided to the Adjudicating Authority, to include the PIR with enclosures, chain of command comments, and character or material witness statements.

  (3) Schedule the adjudicative hearing, informing the accused midshipman and accused midshipman's chain of command, including their varsity sport team captain, if applicable.

  (4) Provide to the Adjudicating Authority a complete hearing package to include: Midshipman Suspect's Acknowledgement and Waiver of Rights Form, the Notice of Potential Reimbursement (when applicable), PIR with enclosures, all written comments from the accused midshipman, written comments from midshipman's chain of command, a complete printout of the midshipman's MIDS record (as required), and any statements or evidence submitted by the accused midshipman.

 c.  Maintain necessary records, ensuring that a copy of the PIR is placed in the midshipman's conduct file.

 d.  Train Battalion XOs and PIOs to properly execute their respective duties under this instruction in order to enhance consistency in the administration of the Conduct System within the Brigade, thereby enhancing good order and discipline at the Naval Academy.

 e.  Provide Adjudicating Authorities with precedence from similar cases.

**5.8  <u>Commandant's Legal Advisor</u>**.  The Commandant's Legal Advisor shall:

 a.  Provide advice to the Commandant concerning consistency in the administration of the Conduct System and offer recommendations to enhance consistency when required.

 b.  Appoint PIOs in Major-level conduct offense cases and assign assistant PIOs and legal counsel as appropriate.

 c.  Assist the Deputy Commandant of Midshipmen in reviewing reports of Major-level conduct offenses to determine whether the offenses should be delegated to subordinate Adjudicating Authorities.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

    d.  Review PIRs regarding Major-level conduct offenses.  Advise Adjudicating Authorities whether sufficient evidence exists to support forwarding the case to an adjudicative hearing.

    e.  Be present during all unsatisfactory conduct hearings to ensure the rights of accused midshipmen and witnesses are maintained and protected.

    f.  Provide Adjudicating Authorities such other opinions and advice as is deemed appropriate.

    g.  Advise the Commandant of the legality of awarding midshipmen sanctions and/or recommending midshipmen for separation.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## CHAPTER 6

## CONDUCT GRADING SYSTEM, STANDING, AND UNSATISFACTORY CONDUCT ALTERNATIVES

### 6.1  Grading System

a.  A midshipman's semester conduct grade is based solely upon accumulated demerits received for offenses which took place within that particular conduct semester.  Table 6-A shows accumulated demerit ranges which correspond to each conduct semester letter grade.

| DEMERIT RANGES PER CONDUCT SEMESTER LETTER GRADE | | | | | |
|---|---|---|---|---|---|
| LETTER GRADE | POINT VALUE | FIRST CLASS | SECOND CLASS | THIRD CLASS | FOURTH CLASS |
| A | 4 | 0-25 | 0-25 | 0-30 | 0-35 |
| B | 3 | 26-45 | 26-45 | 31-49 | 36-60 |
| C | 2 | 46-60 | 46-60 | 50-70 | 61-80 |
| D | 1 | 61-70 | 61-70 | 71-80 | 81-90 |
| F | 0 | 71+ | 71+ | 81+ | 91+ |

Table 6-A

b.  Offenses Pending Adjudication at Semester's End.  Midshipmen accused of a conduct offense which has not been adjudicated by the end of the conduct semester will receive a grade of "Incomplete" in Conduct until the case is adjudicated.  Following adjudication, the appropriate grade will be entered by the Conduct Officer.

### 6.2  Conduct Standing.  A midshipman's conduct standing is also based upon accumulated demerits.  There are three categories of standing:  proficient, deficient, and unsatisfactory.

a.  Proficient.  A semester conduct letter grade of A, B, or C.

b.  Deficient.  Deficient status remains until a conduct semester letter grade of "C" or better is earned at the end of a semester following a deficient semester.  This status exists if:

(1) A semester conduct letter grade of D is earned, or

(2) Accumulated demerits exceed two-thirds of the yearly allowance (see Table 6-B).

c.  Unsatisfactory.  Unsatisfactory status remains until a conduct semester letter grade of "C" or better is earned at the end of a semester following an unsatisfactory semester.  This status exists if:

(1) guilt is determined in a 6K-level offense, or

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

(2) guilt is determined in two separate Major-level offenses committed within two consecutive conduct semesters, or three separate Major-level offenses within a career at the Naval Academy, or

(3) terms of probation are violated, or

(4) a semester conduct letter grade of F is earned, or

(5) accumulated demerits exceed the yearly demerit allowance (see Table 6-B), or

(6) accumulated demerits exceed the career demerit allowance (see Table 6-B).

| DEMERIT ALLOWANCES | | | |
|---|---|---|---|
| CLASS | YEARLY DEMERIT ALLOWANCE (YDA) | (2/3 YDA) DEFICIENCY LEVEL | CAREER DEMERIT ALLOWANCE |
| 1/C | 140 | 95 | 335 |
| 2/C | 140 | 95 | 315 |
| 3/C | 160 | 110 | 270 |
| 4/C | 180 | 125 | 180 |

Table 6-B

d.  Delayed Graduation.  Subject to approval by the Superintendent, the Commandant may recommend delayed graduation for 1/C midshipmen who become unsatisfactory in conduct during the second semester of their 1/C year.  If approved, such delayed graduation will occur between the scheduled graduation date and the end of the following fall semester.

## 6.3  Counseling and Notification of Deficient Status

a.  Counseling.  The Company Officer, Company Senior Enlisted Leader, and/or the Company Commander should counsel any midshipman they believe to be at risk of becoming deficient or unsatisfactory in conduct.  The motivation for counseling, as well as specific guidance given, will be documented and placed in the midshipman's performance jacket.

b.  Notification of Deficient Status.  When a midshipman becomes deficient in conduct, the Company Officer, Company Senior Enlisted Leader, Company Commander, and the Conduct Office receive notifications via e-mail of DEFICIENT CONDUCT STANDING from MIDS. Midshipmen who are in a deficient standing should be notified of their status by their chain of command, at which time the Company Officer, Company Senior Enlisted Leader, and/or Company Commander should counsel the midshipman, document the counseling session, and file the documentation in the midshipman's performance jacket.  Failure of the chain of command to provide notification and/or conduct counseling does not preclude further processing if the concerned midshipman subsequently becomes unsatisfactory in conduct.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**6.4  Unsatisfactory Conduct Procedures**.  If a midshipman becomes unsatisfactory in conduct, that midshipman's overall record will be reviewed by the chain of command for referral to the Conduct Office.  Recommendations by the chain of command are forwarded to aid the Commandant in deciding upon a course of action and final disposition.

**6.5  Commandant Discretion Regarding Unsatisfactory Conduct.**  The Commandant may elect to review a midshipman's record for unsatisfactory conduct processing if they determine such action is warranted based on the egregiousness of an individual offense, series of offenses, or the totality of a midshipman's record.  If the Commandant elects to review a particular case, all probation options in Chapter 4 will be available to them, including recommending the midshipman for separation.

Ex. H

CHAPTER 7

MIDSHIPMEN INFORMATION DATA SYSTEM (MIDS)

**7.1  General.**  The Midshipmen Information Data System (MIDS) allows online entry and tracking of Form-2s.  It automatically calculates conduct standings and conduct grades based on demerits entered into Form-2s.

**7.2  Entering a Form-2**

   a.  MIDS allows electronic access to Form-2s by the following people using the annotated MIDS modules:

      (1) Conduct Office:  [Conduct-Validate/Maintain Mid Offenses]

      (2) Battalion Officers, Company Officers, Company Senior Enlisted Leaders, Brigade Commander, Brigade XO, Brigade Conduct Officer, Regimental Commanders, Battalion Commanders, Battalion Conduct Officers, Company Commanders, Company Conduct Officers: [Conduct-Record Offenses]

      (3) All midshipmen, faculty, and staff personnel:  [Conduct-Report Mid Offenses]

   b.  Required Information for a Form-2.  Individuals charging an offense are required to enter the following information:

      (1) [Alpha] – Alpha number of the accused midshipman.

      (2) [Semester] - Semester during which alleged offense occurred (fall or spring).

      (3) [Commit Date] - Actual date upon which the alleged offense occurred.

      (4) [Level of Offense] – Minor or Major (select Major for 6K-level offenses)

      (5) [Primary Offense] - Offense code and description of highest-level offense being alleged (only one may be selected).

      (6) [Secondary Offense] - Offense code and description of other offenses being alleged, if necessary.  It is possible to select multiple items from the secondary offense list.

      (7) [Reporter Type] - Category of reporting individual (midshipman, Officer, Civilian, CDO, or Other).  Company Senior Enlisted Leaders must select "Other."

      (8) [Incident Summary] - Brief description of events surrounding the alleged offense.  The incident summary should be a short and concise statement including sufficient detail to put the accused midshipman on notice for the alleged offense.  Reference OOW SITREP # if applicable.

Ex. H

### 7.3  Updating a Form-2

a.  Investigation of Conduct Cases.  MIDS allows for the investigation of all offenses to be tracked online.

(1) Assigning a PIO.  PIOs can be assigned to conduct cases by the Conduct Officer and Battalion XOs via the [Conduct-Assign PIO] module in MIDS or directly on the Form-2.

(a) PIOs selected from the drop-down menu of authorized personnel within MIDS are notified by e-mail of their assignment.

(b) PIOs assigned via the [Other PIO] field must be notified by the assigning officer.

(c) Others who receive a carbon copy of the PIO assignment e-mail include the accused midshipman, Conduct Office personnel, Battalion XOs, Company Officers, Company Senior Enlisted Leaders, Company Commanders, and Company Conduct Officers.

b.  Entering a Plea.  Midshipmen who have been formally charged with a conduct offense may enter a plea and a statement into MIDS prior to their scheduled adjudication.  To enter a plea, the midshipmen must use the [Conduct-Enter Plea] module located on the midshipmen menu in MIDS.  An accused midshipman may update their plea at any time prior to the findings of guilt at an adjudication per Section 3.3.

c.  Awarding Sanctions for Conduct Cases

(1) The following individuals may use the indicated MIDS modules to enter results of an adjudication into the Form-2:

(a) Commandant's Conduct Officer: [Conduct Validate/Maintain Mid Offenses]

(b) Battalion XOs, Company Officers, Company Senior Enlisted Leaders, Brigade Conduct Officer, Battalion Conduct Officers, Company Commanders, Company Conduct Officers: [Conduct-Record Offenses]

(2) MIDS prevents users from entering sanctions in excess of the adjudicator's authority or limits defined within this manual.

d.  Entering Awarded Sanctions.  MIDS allows entry of sanction details into the Form-2 and automatically calculates the end dates for all sanctions except probation and remediation.

(1) Awarded Sanction

(a) [Demerits Award] - Enter the net number of demerits (do not include any demerits that were suspended).

(b) [Restriction] – Enter days of restriction awarded.

(c) [Tour Type] – Enter number of days.  Tours may only be inserted if Restriction is NOT awarded.

(d) [Loss of Privs] – Enter number of days.  Specify which privileges are being revoked in the Award Comment block.

(e) [Loss of Car Privs] – Enter number of days.  Chapter 2 specifies minimum number of days to be awarded for parking violations (offense code 04.18).

(f) [Lost Leave] – Enter number of months.  If specific end date is desired, annotate in Award Comment block.

(g) [Extra Duty] – Enter number of days.  Specify which duties are being assigned in the Award Comment block.

(h) [Conduct/Honor Probation] – Enter number of months and end date.

(i) [Remediation Award] – Enter number of months and end date.

(j) [Reduction in Rank] – No Longer Applicable, leave blank.

(2) Deferred Sanctions.  Restriction and tours may be suspended within the limits and guidelines established in Chapter 4.  Select whether sanctions will be suspended or deferred using the drop-down menu and insert the date that the sanctions will begin using the calendar icon.

(3) [Award Comment] - A short narrative shall be entered that includes the following:

(a) Statement of Findings.  Award comment should include the adjudicator's findings regarding guilt or innocence of specific offenses. (e.g., "Accused midshipman was found guilty/not guilty of the following offenses...").  Additionally, it should include specific details on sanctions awarded and detail any suspensions or deferments and the reasons.

(b) Notes regarding any further disposition (e.g., Retained by Deputy Commandant of Midshipmen, Forwarded to Commandant, Forwarded to Superintendent, Separated by Superintendent, Retained by Commandant, Retained by Superintendent, etc.).

## 7.4  Validating a Form-2

a.  Verification.  Prior to validating a Form-2 the Conduct Office will ensure the following:

(1) Form-2 is entered properly and charges are correct.

(2) Conduct case was adjudicated properly and the Form-2 was updated accordingly.

(3) Awarded sanctions were properly entered into the matrix on the Form-2 and the Award

Ex. H

Comment is complete.

   b.  Validation.  A Form-2 is validated by selecting "yes" from the drop-down menu in the [Validated] field.  This may only be done by the Conduct Office using the [Conduct-Validate/Maintain Mid Offenses] module.  NOTE: After the Conduct Office has validated a Form-2, the users of [Conduct-Record Offenses] and [Conduct-Record Company Offenses] can modify only the award comment.

   c.  Calculations Performed upon Validation.  Once the record has been validated, the conduct standing of the accused midshipman is calculated and updated.  If the midshipman is determined to be deficient or unsatisfactory according to the guidelines in Chapter 6, an e-mail will be sent to the Conduct Officer, Company Officer, Company Senior Enlisted Leader, and the Company Commander.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## CHAPTER 8

## CONDUCT REMEDIATION

**8.1** <u>General</u>.  The Conduct System utilizes the Command Managed Equal Opportunity (CMEO) Office, the Alcohol Drug and Education Office (ADEO), and/or a tailored Conduct Remediation Program to help remediate midshipmen whose misconduct is attributed to lack of compliance with governing regulations (e.g., UCMJ, Navy Regulations, USNA Regulations, SECNAV and OPNAV Instructions, General Orders, Federal, State or Local Laws) or to a lack of training.

**8.2** <u>CMEO</u>.  Midshipmen whose conduct offense is of a sexual nature, is sexually harassing in nature, demonstrates elements of gender bias, or exhibits adverse behavior as defined by Department of Defense, DoN, or USNA equal opportunity polices may be assigned to the Dignity and Respect Remediation Program.  Dignity and Respect remediation will be conducted per Commandant of Midshipmen Instruction 5354.2 (series) and will be assigned by the Commandant in a Letter of Instruction (LOI) (TAB I).  A copy of any such letter, including a conduct probation letter where Dignity and Respect Remediation is an included condition, will be given to the Commandant's CMEO Officer.

**8.3** <u>ADEO</u>.  A command referral for substance abuse screening shall be directed for midshipmen whenever the Adjudicating Authority believes alcohol to be a contributing factor to their misconduct (this does not preclude peer or self-referrals).  Substance abuse screening will be assigned in writing by the Commandant in an LOI.  A copy of any LOI directing substance abuse screening shall be given to ADEO.  For further ADEO information see Commandant of Midshipmen Instruction 5350.1 (series).

**8.4** <u>Conduct Remediation</u>

   a.  Conduct remediation is not a sanction; it is an opportunity for a midshipman to receive additional guidance and mentorship to correct their deficiencies.  Remediation shall be tailored to the accused midshipman and their conduct offense.  The remediator shall meet with the accused midshipman to develop, and subsequently implement, an appropriate remediation program for the accused midshipman.

   b.  The remediation program may utilize the following list of resources or other vetted organizations not listed:

      (1) CMEO Officer.   Equal Opportunity Training for biases based on race, color, ethnicity, national origin, religion, sex (including gender identity), or sexual orientation.  Contact the CMEO Officer.

      (2) Midshipmen Development Center.  See website for list of services: http://intranet.usna.edu/MDC/

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

(3) Annapolis Fleet & Family Support Center (410) 293-2641.  Offers an Anger Management Workshop that is available to midshipmen.  See website for a list of their other services:  http://www.usna.edu/FamilyServices/

(4) Midshipmen Action Group (MAG).  MAG does many community service projects that the accused midshipman could participate in.  See their website: http://intranet.usna.edu/MidActivities/ECA/MAG.php

(5) Vice Admiral Stockdale Center for Ethical Leadership Library located in Luce Hall Room 201.  Select a book from which the accused midshipman could benefit upon reading.

**8.4.1 Assignment of a Conduct Remediator**.  If Conduct Remediation is desired, it will be assigned to the accused midshipman via an LOI.   Any Officer or Non-Commissioned Officer on the Yard (retired or active) is eligible to serve as a conduct remediator.  Selection and assignment of a remediator is at the discretion of the adjudicating authority, but the remediator should not be an officer in the accused midshipman's Chain of Command or otherwise involved in the investigation or adjudication of the midshipman's conduct case.   When conduct remediation is directed at either a Deputy Commandant of Midshipmen adjudication or a Commandant hearing and a specific remediator is not identified, the chain of command will recommend a remediator to the Commandant's Conduct Officer.  The remediator shall be assigned by means of an LOI by the Commandant.

**8.4.2 Minimum Requirements of Conduct Remediation**.  At a minimum, a conduct remediation must contain the following:

   a.  An initial counseling session to determine what issues and circumstances may have caused the problem.  These factors should remain in focus throughout the entire remediation period.

   b.  A Midshipman Development Plan—which may include a Plan of Action and Milestones (POA&M)—to establish both personal and professional goals for the remediation, must be created by the midshipman and remediator.  This plan should be created within the first week following the initial counseling session.

   c.  A meeting, no less than one time per week.  In addition to the meeting, the remediator may require the midshipman to complete weekly assignments.  Assignments may include having the midshipman keep a weekly journal, write essays, or read books or articles for further discussion.

   d.  A final essay to be turned in with the final evaluation, no less than four pages in length (double-spaced with 1-inch margins).  The essay should document the progress the midshipman has made: where they started, everything they have learned, how they have changed, and their understanding post-remediation.  It should relate to their duties as a midshipman and potential career as a future Naval or Marine Corps Officer.  It should clearly show that the midshipman understands the concept of remediation and how it will relate to success in the future as an officer.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

### 8.4.3 Timeline and Early Termination of Remediation.

a. Remediation shall continue even when the Remediator and midshipman are not co-located. The remediation process shall continue during all holiday and summer breaks to the maximum extent possible.  Phone, text, email, and video communications are acceptable alternatives and may be used during these periods.  The midshipman may participate in summer training; however, significant events (such as extended illnesses, emergency leave periods, etc.) or inability to make satisfactory progress within the allotted remediation period may require an extension of the remediation period. Normal occurrences in the day-to-day life of midshipmen (such as movement orders and sick days) will not normally require an extension of the remediation period.  The Commandant of Midshipmen is the approving authority for all extensions under this paragraph.

b. Remediation may be successfully completed early if the midshipman has made significant positive progress during the remediation period.  If the remediator has determined the midshipman has met all remediation goals and there would be no added benefit to continuing the remediation, the remediator may recommend the remediation period be shortened.  The remediator must have the concurrence of the Deputy Commandant of Midshipmen prior to submitting the midshipman's final paper to the Commandant.  The justification for early completion of the program must be clearly stated in the remediator's endorsement.

c. Remediation may be terminated early if the remediator determines the midshipman has failed to meet any requirement of the remediation, violated assigned sanctions, or committed further conduct or honor offenses during the remediation period.  The remediator will prepare a remediation failure report and clearly state the reason(s) for recommending termination of the program.  Remediation normally may not be terminated without conducting at least four meetings (in addition to the initial meeting).  Remediation will continue until a final terminated decision is made by the Commandant or the midshipman has been officially separated or discharged from USNA.

### 8.4.4 Final Report and Routing Requirements.    All reports route through the midshipman's Chain of Command prior to the Conduct Office.  The following items must be included in the routing folder:

a. Remediator's Report.  The remediator shall submit an evaluation of the accused midshipman's aptitude for commission at the conclusion of the Conduct Remediation Program. The report will include a complete overview of the goals of the remediation, the steps taken to achieve the goals, and the midshipman's progress in achieving the goals.  A sample final report of conduct remediation letter is provided in TAB J.  The remediator must recommend whether the midshipman successfully completed remediation.  The remediator's recommendation should focus on the analysis of the midshipman's officer potential and should be based on the remediator's observations during the Conduct Remediation Program.  The remediator is not limited to personal observations in arriving at their recommendations.  The remediator's evaluation must include one of the following recommendations:

(1) Conduct Remediation successfully completed and a recommendation to remove the midshipman from the program.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

(2) Conduct Remediation not successfully completed and a recommendation to extend the Conduct Remediation period for (X) length of time and/or a recommendation to assign a different remediator.  See TAB K.

(3) Conduct Remediation not successfully completed and a recommendation to forward the midshipman to the Superintendent for separation in accordance with the midshipman's LOI.

b.  Company Officer's Report.  The midshipman's Company Officer shall submit their own evaluation of the midshipman addressing all matters required in the Remediator's Report.  The Senior Enlisted Leader and Battalion Officer will review the memorandum.  If any member of the Chain of Command disagrees with the recommendation, they are required to submit their own letter.  See TAB L.

c.  The midshipman's final essay shall be included for routing and evaluation.

d.  The midshipman's Development Plan, with the POA&M if utilized, to show the goals established for the remediation period and how successful the midshipman was at achieving the set goals.

e.  The midshipman's original Letter of Instruction designating the remediator.

**8.4.5 Final Decision**.  Upon receipt of the completed final report, the Commandant may approve the completion of remediation, extend the remediation period with or without a new remediator, or forward the midshipman to the Superintendent for separation.  The Commandant may, but is not required to convene a hearing or Remediation Review Board prior to making their decision.  The Deputy Commandant of Midshipmen will determine the members of a Remediation Review Board if one is to be convened.  If the Commandant extends the remediation period with or without a new remediator, a new LOI will be issued.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## TAB A - OFFENSE ELEMENTS

**02.01  Cancelled.**

**02.02 (Variable) Violation of oral or written orders addressed to an individual or group.**

    a.  Elements:

        (1) That the accused received a lawful order either orally or in writing;

        (2) That the accused had knowledge of the order;

        (3) That the accused had a duty to obey the order; and

        (4) That the accused failed to obey the order.

**02.03  Cancelled.**

**02.04 (Variable) Violation of local instruction, regulation, or notice.**

    a.  Elements:

        (1) That there was in effect a certain local instruction, regulation, or notice;

        (2) That the accused had a duty to obey it; and

        (3) That the accused violated or failed to obey the instruction, regulation, or notice.

**NOTE:**  Specify the specific instruction, regulation, or notice which was violated.  If the offense is specifically described by another offense code, that offense code should be used.

**NOTE**:  Local instructions, regulations, and notices are those applicable specifically to the Brigade of Midshipmen, including but not limited to USNA Instructions, COMDTMIDN Instructions, and ACDEAN Instructions.

**02.05 (Variable) Failure to perform a duty properly / dereliction of duty.**

    a.  Elements:

        (1) That the accused had certain duties;

        (2) That the accused knew or reasonably should have known of the duties; and

        (3) That the accused failed to perform the duties properly or was otherwise derelict in the performance of those duties.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**02.06 (Variable) Interfering with an individual who is performing a duty.**

    a. Elements:

        (1) That an individual was performing an official duty;

        (2) That the accused knew or reasonably should have known the individual was performing an official duty;

        (3) That the accused did or omitted to do certain acts; and

        (4) That, under the circumstances, such acts or omissions interfered with the individual's performance of duty.

**02.07 (Variable) Aiding, abetting, counseling, commanding, or procuring the commission of an offense actionable under this instruction.**

    a. Elements:

        (1) That an offense under the Administrative Conduct System was committed by a certain person other than the accused; and

        (2) That the accused aided, abetted, counseled, commanded, or procured the commission of the offense.

    b. Elements (Aiding after the fact):

        (1) That an offense under the Administrative Conduct System was committed by a certain person other than the accused;

        (2) That the accused knew that this person had committed such offense;

        (3) That thereafter the accused received, comforted, or assisted the offender; and

        (4) That the accused did so for the purpose of hindering or preventing the apprehension, adjudication, or punishment of the offender.

**NOTE:** The level of this offense should generally be equal in magnitude to the offense committed by the principal offender.

**NOTE:** Offense code 05.04 will be used for aiding/abetting an alcohol offense.

**02.08 (Variable) Failure to report or address a delinquency.**

    a. Elements:

A-2

(1) That a certain person, other than the accused, was delinquent in behavior;

(2) That the accused had first-hand knowledge of the delinquent behavior (e.g., witness or informed personally by the person who was delinquent);

(3) That the accused knew or reasonably should have known the behavior was delinquent; and

(4) That the accused failed either to report the delinquency to competent authority or to address the delinquency in a reasonable manner under the totality of the circumstances.

**NOTE:**  Any action or omission which violates a lawful instruction, regulation, order, direction, or similar official guidance directed towards a midshipman is considered delinquent.  A delinquency can include a violation of the honor concept, academic instructions, and course policies.

**02.09 (Variable) Failure to use good judgment.**

   a.  Elements:

(1) That the accused engaged in or omitted certain acts or made a certain decision; and

(2) That the accused failed to exercise good judgment under the circumstances.

**NOTE:**  An accused is not guilty of this offense simply because the Adjudicating Authority would have made a different decision than the accused.  The question whether good judgment was exercised must be answered based on the totality of the circumstances.

**03.01 (Minor) Failure of 4/C midshipman to follow requirements of plebe year training program as outlined in MIDREGs, Reef Points, and other relevant instructions, directives, and orders.**

   a.  Elements:

(1) That the accused was a 4/C midshipman;

(2) That a certain requirement of the plebe year training program applicable to all 4/C midshipmen was announced in MIDREGs, Reef Points, or other relevant instructions, directives, or orders; and

(3) That the accused failed to follow the requirement.

**NOTE:**  This offense code does not apply to requirements of the plebe year training program where other specific sanctions are provided (e.g., failure of ProKnow).

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**03.02 (Variable) Failure of upper-class midshipman to support the plebe year training program.**

   a.  Elements:

     (1) That the accused was a 3/C, 2/C, or 1/C midshipman;

     (2) That the accused was required by MIDREGs or another instruction, directive, or order to take a certain action or refrain from taking a certain action in support of the plebe year training program; and

     (3) That the accused failed to take or not take the appropriate action.

**03.03  Moved to 04.22**

**03.04 (Minor) Real-time electronic communications between 4/C and upperclassmen in violation of MIDREGS.**

   a.  Elements:

     (1) That the accused made a real-time electronic communication;

     (2) That the electronic communication was directed to a 4/C from an upperclassman or to an upperclassman from a 4/C; and

     (3) That the electronic communication was not sent for a professional purpose**.**

**04.01 (Major) Fraternization, not of a romantic or sexual nature.**

   a.  Elements:

     (1) That the accused engaged in an unduly familiar relationship with a midshipman in the same company, with a midshipman resulting in a relationship between a 4/C Midshipman and upperclassmen, with an enlisted member of any armed service, with an officer of any armed service, or with a civilian staff or faculty member at USNA;

     (2) That the accused then knew or reasonably should have known the other person belonged to such category;

     (3) That the undue familiarity was not of a sexual or romantic nature; and

     (4) That the relationship violated the custom of the naval service, USNA policies, or MIDREGS.

Ex. H

**04.02 (6K) Fraternization, of a romantic or sexual nature.**

   a. Elements:

     (1) That the accused engaged in an unduly familiar relationship with a midshipman in the same company, with a midshipman resulting in a relationship between a 4/C Midshipman and upperclassmen, with an enlisted member of any armed service, with an officer of any armed service, or with a civilian staff or faculty member at USNA;

     (2) That the accused then knew or reasonably should have known the other person belonged to such category;

     (3) That the undue familiarity was of a sexual or romantic nature; and

     (4) That the relationship violated the custom of the naval service, USNA policies, or MIDREGS.

**04.03 (6K) Sexual misconduct.**

   a. Elements:

     (1) That the accused committed a certain act;

     (2) That the act was done with intent to arouse or gratify the sexual desire of any person or reasonably tend to give the appearance that an act with such intent is occurring; and

     (3) That the act was committed in an area under military control or under circumstances which are service discrediting or prejudicial to good order and discipline.

**NOTE:**  Sexual misconduct is any sexual act or contact at the Naval Academy or other locations under military control and sexual acts or contact committed under circumstances which are service discrediting or prejudicial to good order and discipline, including generation of pornographic materials.  Areas under military control include USNA, all naval vessels, all military bases, all military vehicles, and all military aircraft.

**NOTE:**  Examples of sexual misconduct include having the door locked while two or more individuals are in a room who are not all assigned roommates of the room, fondling, displays of affection on a rack, lying in a rack together, sexually motivated nudity, indecent exposure, generating pornography, oral sex, and sexual intercourse.

**04.04 (6K/Major) Sexual harassment as defined in current SECNAV, OPNAV, and USNA Instructions.**

   a. Elements:

     (1) That there was an order or regulation as to sexual harassment in the SECNAV,

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

OPNAV, and USNA Instructions;

(2) That the accused had a duty to obey it; and

(3) That the accused violated or failed to obey the order or regulation as to sexual harassment as defined by SECNAV, OPNAV, or USNA Instructions.

**NOTE**:  Sexual harassment includes (but is not limited to) unwelcome sexual advances, requests for sexual favors, and passive or indirect actions that create a hostile work environment such as sexually explicit posters, pictures or screen savers, and other verbal or physical conduct of a sexual nature.

### 04.05 (Variable) Disrespect or insubordination to a superior or an individual in a position of authority.

a.  Elements:

(1) That the accused did or omitted certain acts or used certain language;

(2) That such behavior or language was directed toward a certain individual superior in rank or in a position of authority;

(3) That the accused then knew that the person toward whom the acts, omissions, or words were directed was a superior or a person in a position of authority; and

(4) That, under the circumstances, the accused, by such behavior or language, treated with contempt or was disrespectful to said superior or person in a position of authority.

**NOTE:** Individuals in a position of authority include company Senior Enlisted Leaders and midshipman chain of command.

**NOTE:** It is not required that the disrespectful behavior be in the presence of the superior, but ordinarily one should not be held accountable under this offense code for what was said or done in a purely private conversation.

### 04.06 (Major) Challenge to personal combat or threat of physical violence.

a.  Elements:

(1) That the accused communicated certain language expressing a challenge or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future;

(2) That the communication or challenge was made known to that person or a third party; and

(3) That the communication or challenge was wrongful.

A-6

Ex. H

**NOTE:**  When the challenge or threat culminates in physical action, conduct code 04.21 (UCMJ Article 128) will be charged

**04.07 (Major) Inappropriate use of computer or government network.**

    a.  Elements:

        (1) That the accused used a government computer or network; and

        (2) That the use was for unauthorized or inappropriate purposes.

**04.08 (Major) Possession, viewing, or display of pornographic materials in Bancroft Hall or on the Naval Academy complex.**

    a.  Elements:

        (1) That the accused knowingly possessed, viewed, or displayed pornography; and

        (2) That the accused committed such acts inside Bancroft Hall or onboard the Naval Academy complex.

**04.09 (Major) Displays of affection (anytime in Bancroft Hall or when in uniform in public.)**

    a.  Elements:

        (1) That the accused committed and directed certain acts toward another person;

        (2) That the acts under the circumstances were displays of affection; and

        (3) That the acts occurred within Bancroft Hall or while in uniform in public.

**NOTE:**  Displays of affection are defined as physical acts which could reasonably be interpreted by an observer as evidence that those participating are involved in a romantic relationship. Displays of affection include, but are not limited to, hand holding, touching, massaging/back rubs, sitting on a lap, touching, and kissing.

**04.10 (Variable) Harassment of a non-sexual nature.**

    a.  Elements:

        (1) That the accused engaged in a course of conduct directed toward another person or group of people; and

        (2) That this course of conduct was of an unwanted or harassing nature to the other person

or group of people.

**NOTE:**  Harassment includes, but is not limited to, abusive or pejorative language and actions that denigrates another person.  Harassment typically involves, but is not required to involve, language and actions concerning age, ethnicity, race, religion, sex, or sexual orientation. Examples include, but are not limited to, racial or ethnic slurs; humor, jokes, or teasing about sex, race, age, religion, disability, or gender-specific traits; abusive language, insults, or threats; vulgar sounds or gestures; offensive or hateful pictures, posters, calendars, cartoons, or obscene e-mail; offensive or derogatory written materials; exclusionary or demeaning actions or activities based on age, ethnicity, sex or race.

**04.11 (Major) Destruction or damage of government or private property.**

   a.  Elements:

      (1) That the accused, without proper authority, damaged or destroyed certain property in a certain way;

      (2) That the property was that of the government or another person;

      (3) That the damage or destruction was intentional or due to gross negligence; and

      (4) That the property was of a certain value or the damage was of a certain amount.

**EXCEPTION:**  This does not refer to destruction or damage of one's own property.  However, such an action may be covered by another offense code, depending on the circumstances.

**04.12 (Major) Introduction of, or failure to remove, unauthorized persons from Bancroft or King Hall.**

   a.  Elements:

      (1) That the accused introduced a person into, or failed to take affirmative action to remove a person from, Bancroft or King Hall; and

      (2) That the accused knew or should have known that the other person was not authorized to be in Bancroft or King Hall.

**04.13 (Major) Entering a restricted area, including roof areas or any areas marked as such.**

   a.  Elements:

      (1) That the accused entered a restricted area;

      (2) That at the time the accused entered the area, the accused knew or reasonably should have known the area was restricted; and

(3) That the accused entered the area without property authority.

**04.14 (Major) Unauthorized means of ingressing or egressing either Bancroft Hall or the Naval Academy grounds (e.g. "jumping the wall").**

   a.  Elements:

      (1) That the accused entered or exited Bancroft Hall or the USNA grounds; and

      (2) The means by which the accused entered or exited was in violation of applicable regulations or otherwise not authorized by proper authority.

**NOTE:**  Offense code 04.16 will be used for instances of unauthorized ingress to or egress from Bancroft Hall relating to class privileges listed in MIDREGS (e.g., "class doors").

**04.15 (6K) Possession or use of a false, altered, or unauthorized identification card, pass, or similar document (including but not limited to driver's licenses, military ID cards, and other forms of identification.)**

   a.  Elements:

      (1) That the accused used or possessed a certain identification card, pass, or similar document;

      (2) That the identification card, pass or similar document was false, altered, or unauthorized; and

      (3) That the accused then knew or should have reasonably known that the identification card, pass, or similar document was false, altered, or unauthorized.

**NOTE:**  The use or attempted use of false, altered, or unauthorized identification with the intent to deceive is an honor violation.  Possession, without an attempt to use, is strictly a conduct offense.

**04.16 (Variable) Usurping any special or basic class authorizations or privileges.**

   a.  Elements:

      (1) That the accused did or omitted to do a certain act;

      (2) That the act or omission is a privilege as defined in MIDREGS or other instructions, notices, or directives; and

      (3) That the accused is not authorized or entitled to the privilege.

Ex. H

**NOTE:**  This offense code should be used for incidents including the unauthorized wearing of civilian clothes and the use of "class doors."  Offense code 04.19 should be used for instances of driving, maintaining, or operating a vehicle relating to class privileges.

**04.17 (Major/6K) Carelessness in operating a vehicle.**

  a.  Elements:

  (1) That the accused was operating or in physical control of a vehicle;

  (2) That while operating or in physical control of a vehicle, the accused did so in a careless manner.

**NOTE:**  A careless manner is any manner which may reasonably pose a risk to other vehicles, pedestrians, or bystanders.  This includes, but is not limited to, speeding and using a cell phone while driving.

**NOTE:**  This should be charged as a 6K-level offense when the carelessness results in a collision.

**04.18 (Variable) Parking in violation of MIDREGS and/or military base regulations.**

  a.  Elements:

  (1) That there was in effect a certain MIDREG and/or military base regulation with respect to parking;

  (2) That the accused had a duty to obey the regulation;

  (3) That the accused knew or should have known the accused did not have authority to park a vehicle in a certain manner as set forth in the regulation; and

  (4) That the accused parked a vehicle in a manner which violated the regulation**;**

  (5) That the vehicle was not registered with Brigade Ops and/or the proper vehicle stickers and/or placards were not properly displayed.

**NOTE:**  Minimum sanctions for parking violations by a midshipman with a vehicle registered with Brigade Ops and properly displaying vehicle stickers/placard:

  First Offense:  25 demerits, seven days of restriction and loss of Yard parking privileges for 30 calendar days.

  Second Offense:  50 demerits, fourteen days of restriction, and loss of Yard parking privileges for not less than 120 calendar days.

Minimum sanctions for parking violations by a midshipman without a vehicle registered with

Brigade Ops and/or properly displaying vehicle stickers/placard are 50 demerits, 21 days of restriction, and loss of Yard parking privileges for not less than 180 calendar days.

**04.19 (Minor) Driving, maintaining, or operating a motor vehicle in violation of MIDREGS.**

   a.  Elements:

      (1) That there was in effect a certain MIDREG with respect to driving, maintaining, or operating motor vehicles;

      (2) That the accused had a duty to obey the MIDREG;

      (3) That the accused knew or should have known the accused did not have authority to drive, maintain, or operate a motor vehicle per the MIDREG; and

      (4) That the accused drove, maintained, or operated a motor vehicle without proper authority.

**NOTE:**  Minimum sanctions for driving, maintaining, or operating a motor vehicle in violation of MIDREGS are 25 demerits, seven days of restriction, and loss of Yard parking privileges for 120 calendar days starting from the first date of eligibility for Yard parking privileges per MIDREGS.

**04.20 (Minor) Failure to have the door fully open when two or more individuals are in a room who are not all assigned roommates of the room.**

   a.  Elements:

      (1) That the accused occupied a room with one or more persons;

      (2) That any person occupying the room was not assigned to the room; and

      (3) That while the accused occupied the room, the door was not fully open.

**NOTE:**  All midshipmen present in the room should be charged with this offense code, not just the midshipman assigned to the room.

**NOTE:**  The offense code 04.03 should be used for instances when the door is locked while the room is occupied by two or more individuals who are not all assigned roommates of the room.

**04.21 (6K/Major) Violation of UCMJ, Navy Regulations, SECNAV and OPNAV Instructions, General Orders, federal, state, or local laws.**

   a.  Elements:

      (1) That there was in effect a law or regulation contained in UCMJ, Navy Regulations,

SECNAV and OPNAV Instructions, General Orders, federal, state, or local laws;

(2) That the accused had a duty to obey the law or regulation; and

(3) That the accused violated or failed to obey the law or regulation.

**NOTE:**  Specify the law or regulation which was violated.  If the offense is specifically described by another offense code, that offense code should be used.

**04.22 (6K) Hazing.**

a.  Elements:

(1) That the accused caused another individual to suffer or be exposed to any activity which is cruel, abusive, humiliating, oppressive, demeaning, or harmful; and

(2) That the accused lacked proper authority to do so.

**NOTE:**  Hazing violates 10 U.S.C. § 8464, which defines hazing as "any unauthorized assumption of authority by a midshipman whereby another midshipman suffers or is exposed to any cruelty, indignity, humiliation, hardship, or oppression, or the deprivation or abridgement of any right."  While 10 U.S.C. § 8464 states that "no midshipman may be dismissed for a single act of hazing except by sentence of a court-martial," related offenses may result in separation through the Conduct System and 10 U.S.C. § 8462.

**04.23 (Variable) Conduct unbecoming a midshipman.**

a.  Elements:

(1)  That the accused did or omitted to do a certain act or acts;

(2)  That, under the circumstances, the accused's conduct was unbecoming of a midshipman.

**NOTE:**  Conduct unbecoming a midshipman means action or behavior in an official capacity which, in dishonoring or disgracing the person as a midshipman, seriously compromises the midshipman's character, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the midshipman personally, seriously compromises the person's standing as a midshipman.  There are certain moral attributes common to the ideal midshipman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, and cruelty.  Not everyone is or can be expected to meet unrealistically high moral standards, but there is a limit of tolerance based on customs of the Service and military necessity below which the personal standards of a midshipman cannot fall without seriously compromising the person's standing as a midshipman.

Ex. H

**05.01 (Major) Irresponsible drinking.**

    a.  Elements:

        (1) That the accused consumed alcohol;

        (2) That the accused became drunk or intoxicated; and

        (3) That the accused exhibited significant effects of the drunkenness or intoxication.

**NOTE**:  Evidence of Irresponsible Drinking includes, but is not limited to, use of excessive profanity, aggressive and/or disrespectful behavior, excessive stumbling or falling down, vomiting.

**05.02 Cancelled.**

**05.03 Cancelled**.

**05.04 (6K/Major) Aiding/abetting an alcohol offense or failure to prevent or act upon an alcohol offense.**

    a.  Elements (Aiding/abetting):

        (1) That an alcohol offense under the Administrative Conduct System was committed by a certain person other than the accused; and

        (2) That the accused aided, abetted, counseled, commanded, or procured the commission of the offense.

    b.  Elements (Aiding after the fact):

        (1) That an alcohol offense under the Administrative Conduct System was committed by a certain person other than the accused;

        (2) That the accused knew or should have known that this person had committed such offense;

        (3) That thereafter the accused received, comforted, or assisted the offender; and

        (4) That the accused did so for the purpose of hindering or preventing the apprehension, adjudication, or punishment of the offender.

    c.  Elements (Failure to act upon):

        (1) That an alcohol offense under the Administrative Conduct System was committed by a certain person other than the accused;

(2) That the accused knew or should have known that this person would commit or was committing such offense; and

(3) That the accused failed to take substantive steps to prevent the offense from occurring or to take substantive steps to stop the offense if it was already in progress at the time the accused became aware of the offense.

**05.05 (6K) Consumption, possession, or introduction of alcohol within/into Bancroft Hall or aboard ship.**

   a.  Elements:

(1) That the accused consumed, possessed, or introduced alcoholic beverages within/into Bancroft Hall or onboard a Navy vessel; and

(2) That the accused did not have proper authority to consume, possess, or introduce the alcoholic beverage within/into Bancroft Hall or Navy vessel.

**05.06 (6K) Providing alcohol to underage persons.**

   a.  Elements:

(1) That the accused provided alcohol to another person;

(2) That this person was not of age to possess or consume alcohol under the law of the local jurisdiction, including orders and regulations issued by a Commanding Officer or other competent authority while on training; and

(3) That the accused knew or should have known that the other person was not of age to possess or consume alcohol.

**05.07 (6K) Being under the influence of alcohol in a nature that brings discredit upon the naval service, outrages public decency, or results in a breach of the peace.**

   a.  Elements:

(1) That the accused consumed alcohol;

(2) That the accused became drunk or intoxicated; and

(3) That while drunk or intoxicated, the accused committed an act which brought discredit upon the naval service, outraged public decency, or resulted in a breach of the peace.

**05.08 (6K) Consuming alcohol or being under the influence of alcohol while on duty.**

   a.  Elements:

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

(1) That the accused was in a duty status; and

(2) The accused consumed alcohol or was under the influence of alcohol as a result of prior consumption of alcohol.

**NOTE:**  Midshipmen are considered on duty for all military obligations (e.g., end of liberty, class, duty section), mandatory Brigade events (e.g., lectures, sporting events), and any other time designated as such by competent authority.

**05.09 Cancelled.**

**05.10 (6K) Consumption or possession of alcohol in violation of applicable federal, state, or local law (this includes underage drinking).**

  a.  Elements:

    (1) That the accused consumed or possessed alcoholic beverages; and

    (2) That the consumption or possession of alcoholic beverages violated applicable federal, state, or local law.

**05.11 (Major) Consumption or possession of alcohol in circumstances prohibited by local instruction, regulation, or notice, other than in Bancroft Hall or aboard ship.**

  a.  Elements:

    (1) That the accused consumed or possessed alcohol; and

    (2) That the consumption or possession of alcohol was prohibited by a local instruction.

**NOTE:**  This includes drinking as a 4/C Midshipman, drinking while on Movement Order, and possession of alcohol in any vehicle associated with a MO to include privately owned vehicles.

**05.12 (6K) Drunk driving or driving under the influence of alcohol.**

  a.  Elements:

    (1) That the accused was operating or in physical control of a vehicle; and

    (2) That while operating or in physical control of a vehicle, the accused:

      (a.) was drunk or impaired, or

      (b.) the alcohol concentration in the accused's blood or breath equaled or exceeded limit under applicable federal, state, or local law.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**05.13 (6K) Use, possession, sale, or transfer of illegal drugs or drug paraphernalia.**

a.  Elements:

(1) That the accused used, possessed, sold, or transferred a drug, controlled substance, or drug paraphernalia; and

(2) That the use, possession, sale, or transfer was wrongful per Article 112a, UCMJ, applicable regulations, or other applicable federal, state, or local law.

**06.01 (Minor) Unsatisfactory appearance in uniform (pattern of behavior).**

a.  Elements:

(1) That the accused wore a certain uniform;

(2) That the uniform was in an unsatisfactory condition, the accused improperly wore the uniform, or the accused's appearance in uniform was unsatisfactory (e.g., improper grooming); and

(3) That a pattern of behavior of unsatisfactory appearance exists.

**NOTE:**  Discrepancies must be specified and should have been documented as Form-1s prior to entry as a Form-2.

**NOTE:**  A pattern of behavior is three or more documented instances.

**06.02 (Minor) Unprepared for room or uniform inspection due to laziness or negligence.**

a.  Elements:

(1) That there was an announced room or uniform inspection;

(2) That the accused was unprepared for the inspection; and

(3) That the accused's unpreparedness was due to laziness or negligence.

**06.03 (Minor) Unsatisfactory room standards.**

a.  Elements:

(1) That the accused had a duty to maintain room standards; and

(2) That the accused failed to maintain satisfactory room standards.

Ex. H

**NOTE:**  For the first occurrence of unsatisfactory room standards, at a minimum, a negative Form-1 shall be issued.  Minimum sanctions for a second occurrence within a single semester are five (5) tours.  Minimum sanctions for a third occurrence within a single semester are ten (10) days of restriction.  A fourth occurrence (or more) within a single semester should be charged as offense code 02.05 at least at a Major-level.

**06.04 (Variable) Wearing of uniform in a manner which is prejudicial to good order and discipline or which brings discredit upon the naval service.**

    a.  Elements:

        (1) That the accused wore any official uniform or item from any official uniform;

        (2) That the manner in which the uniform or item was worn was prejudicial to good order and discipline or brought discredit upon the naval service.

**NOTE:**  This offense code includes, but is not limited to, improper wear of the uniform in public.

**07.01 (Variable) Absence without authority from an academic class, military obligation, or formation.**

    a.  Elements:

        (1) That the accused was required to attend an academic class, formation, or other military obligation;

        (2) That the accused knew or reasonably should have known of the time and place of the obligation;

        (3) That the accused was absent from the obligation;

        (4) That the absence was without authority from anyone competent to give the accused leave.

**07.02 (6K) Absence without authority for greater than 24 hours.**

    a.  Elements:

        (1) That the accused absented himself or herself from USNA or his or her place of duty;

        (2) That the absence was without authority from anyone competent to give the accused leave; and

        (3) That the absence was greater than 24 hours.

**07.03 Cancelled.**

**07.04 Cancelled.**

**07.05 Cancelled.**

**07.06 (Major) UA after reporting for taps (i.e., "touch and go").**

   a.  Elements:

      (1) That the accused signed or reported for taps;

      (2) That the accused absented himself or herself from the place the accused was required to be having signed or reported for taps;

      (3) That the absence was without authority from anyone competent to give the accused leave.

**07.07 (Variable) Breaking restriction and/or UA from tours or restriction.**

   a.  Elements (Breaking Restriction):

      (1) That the accused was awarded restriction at a conduct or honor adjudication;

      (2) That the accused failed to fulfill a requirement or condition of restriction; and

      (3) That the failure was without authority from anyone competent to give the accused leave from such requirement or condition.

   b.  Elements (UA from Tours / Restriction):

      (1) That the accused was awarded restriction or tours at a conduct or honor adjudication;

      (2) That the accused was required to report to a tour, muster, or other obligation as a condition of the awarded sanctions;

      (3) That the accused absented himself or herself from the required obligation;

      (4) That the absence was without authority from anyone competent to give the accused leave.

COMDTMIDNINST 1610.2K
27 Jul 2020

## TAB B - MIDSHIPMAN COUNSELING FORM

### SAMPLE FORM 1

**Type of Counseling:** ☐ NEGATIVE ☐ POSITIVE

| | |
|---|---|
| **Name:** | |

| | | |
|---|---|---|
| **Alpha:** | | |
| **Company:** | | |
| **Ac Year (Ending):** | | |
| **Semester:** | | |
| **Commit Date:** | | |
| **Creation Date:** | | |

| | |
|---|---|
| **Reason:** | |
| **Description/Counseling Comments:** | |

| **Counseled By:** | NAME: | RANK: |
|---|---|---|
| **Counselor Signature/Date:** | SIGNATURE: | DATE: |
| **Midshipman Counseled Signature/Date:** | SIGNATURE: | DATE: |

| **Reviewed by Chain of Command (initial/date):** | Co Conduct Officer: | |
|---|---|---|
| | Squad Leader: | |
| | Platoon Commander: | |
| | Company Commander | |

**Validated:**
**(by Company Officer or Senior Enlisted Leader)**   SIGNATURE/DATE:_____

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**TAB C - U.S. NAVAL ACADEMY**
**ACKNOWLEDGMENT AND WAIVER OF MIDSHIPMAN SUSPECT'S RIGHTS**

I, (Accused Mishshipman's Name), (Alpha Number), XX Company, certify and acknowledge by my signature and initials set forth below that I have been advised by (Preliminary Investigative Officer's Name) that I am suspected of:

| Offense Code / Level | | Offense Description |
|---|---|---|
| XX.XX | Level | Offense Description under the USNA Administrative Performance and Conduct System. |

I have also been advised that:

_____ (1) I have the right to remain silent and to make no statement at all;

_____ (2) Any statement I do make can be used against me in a trial by court-martial, an adjudication under the conduct system, or other judicial or administrative hearings;

_____ (3) I have the right to consult with a lawyer prior to any questioning.  This lawyer may be a civilian lawyer retained by me at no cost to the United States, a personal representation military lawyer (PERSREP) at no cost to me, a military lawyer who has been detailed to act as my counsel (if applicable) at no cost to me, or any combination thereof;

_____ (4) I may terminate this interview at any time, for any reason.

_____ I have been provided contact information for local military defense counsel.

_____ I understand my rights as related to me and as set forth above.  With that understanding, I have decided that:

_____ I **do / do not** desire to remain silent.

_____ I **do / do not** desire to consult with a lawyer prior to answering questions.

_____  I make this decision freely and voluntarily.  No threats or promises have been made to me, nor has any pressure or coercion been used against me.

Signature:   _____   Witnessed by:   _____

Printed Name: _____   Printed Name:   _____

Date and Time: _____   Date and Time:   _____

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**TAB D - NOTIFICATION OF POTENTIAL REIMBURSEMENT FOR ADVANCED EDUCATION**

DDd Mmm YY

From:  Legal Advisor to the Commandant of Midshipmen
To:    Midshipman (Full Name), (Alpha), XX company

Subj:  NOTIFICATION OF POTENTIAL REIMBURSEMENT FOR ADVANCED
       EDUCATION

Ref:   (a) 10 U.S.C. 2005

1.  All Midshipmen are required to complete the educational requirements specified in the agreement they signed prior to or on Induction Day and, when applicable, reaffirmed prior to commencement of their 2/C year.

2.  This notice informs you that, per reference (a), if you fail to complete those education requirements, you may either be directed to serve on active duty for the period specified or be required to remit monetary reimbursement for the educational benefits you received at the Academy, an indebtedness that could amount to between $0 and over $200,000.  Further, should you fail to complete any directed period of active duty, either voluntarily or due to misconduct, you may also be required to remit monetary reimbursement to the Government.

3. This notification is given for your benefit before you make any decisions regarding any proposed disciplinary action that could result in your disenrollment.  This advice supplements the prior notices concerning your obligation to the government (active duty service or financial recoupment of the costs of education) that were provided to you prior to your induction to the Naval Academy and upon commencement of your 2/C academic year.

Acknowledged: _____ Date: _____

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## TAB E – SAMPLE PRELIMINARY INQUIRY REPORT

DD Mmm YY

From:   LT Evi Dence, USN, Preliminary Investigative Officer
To:       Deputy Commandant of Midshipmen

Subj:   PRELIMINARY INQUIRY ICO MIDNS 2/C DUDLEY DUWRONG AND IMA SORRAY, USN (CASE #123456)

Ref:     (a) COMDTMIDNINST 1610.2J
            (b) JAGMAN, Chapter II
            (c) R.C.M. 303

Encl:    (1) Statement of MIDN 3/C Wit Ness, USN of 24 Aug 17
            (2) Email from Capt. Lawen Order, USMC of 24 Aug 17
            (3) Result of Interview with MIDN 2/C Dudley Duwrong, USN of 25 Aug 17
            (4) MIDS Report of MIDN Dudley Duwrong
            (5) Result of Interview with MIDN 2/C Ima Sorray, USN of 25 Aug 17
            (6) Photograph of Cigarette Found on 23 Aug 17

1.  This report is the completion of a preliminary inquiry into the subject-referenced case in accordance with references (a) through (c). As a result of the investigation, the following offenses from reference (a) were considered for review:

| Offense Code | | Offense Description |
|---|---|---|
| 02.03 | Minor | Violation of MIDREGS (Section 8.1(5)(n) – smoking outside designated area) with a minor effect |
| 02.07 | Variable | Aiding and abetting commission of an offense (offense code 02.03) |

2.  I have interviewed the following witnesses:

    a.  MIDN 3/C Wit Ness, USN;

    b.  Capt. Lawen Order, USMC;

    c.  MIDN 2/C Dudley Duwrong, USN;

    d.  MIDN 2/C Ima Sorray, USN.

3.  *(If applicable)* The following items of real evidence and/or documents, not enclosed to this report, are available:

    a.  Interview notes (LT Dence, ext. 3-7602).

4.  Summary of Facts:

    a.  On 23 August 2017 at 2000, Midshipman (MIDN) Ness was running on the roadway around Dewey Field when he saw two 2/C  Midshipmen smoking along the seawall nearest Rickover Hall.  MIDN Ness saw Capt.  Order walking out of Luce Hall.  Rather than confront 2/C Midshipmen, MIDN Ness ran over to Capt. Order and reported the suspected smoking.

    b.  When Capt. Order arrived, he saw a male and female midshipman passing a lit cigarette back and forth.  Capt. Order asked the two midshipmen to identify themselves.  The midshipmen identified themselves as MIDN Duwrong

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

Subj:   PRELIMINARY INQUIRY ICO MIDNS 2/C DUDLEY DUWRONG AND IMA SORRAY, USN (CASE #123456 )

and MIDN Sorray.  Capt. Order then informed them they were suspected of smoking in an unauthorized area.  He then verbally informed them they had the right to remain silent and asked them if they understood.  They both remained silent.

5.  Summary of Offenses:

02.03     Minor          Violation of MIDREGS (Section 8.1(5)(n) – smoking outside designated area) with a minor effect

   a.  Elements:

      (1) That there was in effect a certain MIDREG;

      (2) That the accused had a duty to obey it;

      (3) That the accused violated or failed to obey the MIDREG; and

      (4) That the effect of the violation or failure was minor.

   b.  The evidence supports that MIDNs Duwrong and Sorray committed this offense.  MIDREGS section 4.6(3)(a) provides that midshipman may only smoke on the Yard in the designated areas behind Seventh Wing, Eighth Wing, Levy Center, Michelson Hall, and Chauvenet Hall.  Capt. Order viewed both midshipmen smoking a cigarette along the Dewey seawall, which is not a designated smoking area.

02.07     Variable        Aiding and abetting commission of an offense (offense code 02.03)

   a.  Elements:

      (1) That an offense actionable under COMDTMIDNINST 1610.2 was committed by a certain person other than the accused; and

      (2) That the accused aided, abetted, counseled, commanded, or procured the commission of the offense.

   b.  The evidence supports that MIDNs Duwrong and Sorray committed this offense.  By passing the cigarette to each other, both MIDN aided each other in violating MIDREGs by smoking outside a designated area.

6.  Comments of the Investigation Officer

   a.  I recommend that MIDN Duwrong be charged with the following offenses: 02.03, 02.07.  I recommend that his offenses be adjudicated by his Company Officer.

   b.  I recommend that MIDN Sorray be charged with the following offenses: 02.03 and 02.07.  I recommend that her offenses be adjudicated by her Company Officer.

                    *(signature)*
                    E. E. DENCE

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## TAB F - SANCTIONS WORKSHEET

Date of hearing: _____

Rank/Name: _____

Adjudicator: _____

Restriction: _____ days

Tours: _____

Demerits awarded (Conduct): _____

Aptitude grade (Honor): _____

Loss of privileges: _____ months OR until _____

Extra duty or EMI: _____

| Privilege | 1/C | 2/C | 3/C | 4/C |
|---|---|---|---|---|
| Overnight liberty | | | | |
| Weekday town liberty | | | | |
| Civilian attire during liberty | | | | |
| Wearing "spirit gear" in Bancroft Hall | | | | |
| Physical training during study period | | | | |
| Operating a vehicle on board USNA | | Move in/out | | |
| Operating a vehicle w/in 35 miles of USNA | | | | |
| Parking onboard USNA | | | | |
| Move out of Bancroft after Spring Finals | | | | |
| Weekend media utilization for entertainment | | | | |

| Recommendation to Commandant | For ___ months | Until (date) |
|---|---|---|
| Non-Representation Status (may practice and work out with team, no movement orders or competitions ) | | |
| Removal / suspension from sports team/ECAs | | |
| Loss of leave | | |
| Removal from leadership position | | |
| Participation in "Keep what you've earned" w/ ADEO | | |
| DAPA Screening | | |
| Probation | | |
| Remediation | | |
| Company change | | |
| **FORWARD FOR SEPARATION** | | |

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**TAB G - MIDSHIPMAN'S ACKNOWLEDGEMENT AND AWARD OF RESTRICTION FORM**

Date: _____

From: _____
      (Midshipman, Alpha, Company)

To: _____
     (Commandant's Conduct Officer)

Subj:  AWARD OF RESTRICTION

**I acknowledge the following:**

1.  I will read the ADMINISTRATIVE PERFORMANCE AND CONDUCT SYSTEM MANUAL, Chapter 4, which explains restriction requirements more fully within 24 hours of signing this form. _____ (initial)

2.  I understand that summer training or a movement order may supersede restriction.  I realize that once the purpose of the movement order or training is fulfilled, I am obligated to report back to USNA as soon as possible, even though my orders or movement orders may not have expired. _____ (initial)

3.  I will report to Main Office immediately to receive my restriction card and attend the very next muster. _____ (initial)

4.  I understand that I must attend the single muster on days with only one (1) scheduled muster, at least two (2) on days with four, and I must attend at least three (3) musters on days with five (5) scheduled musters in order for that day of restriction to count for me.  I may only miss a muster with proper excusal (anything higher on the table of priorities than tours and restriction musters).  If this causes me to miss the single muster on days which have only one (1) scheduled muster, that day will not count as a day of restriction.  I may miss two (2) musters on days with four (4) or five (5) scheduled musters (with proper excusals) and the restriction day will still count.  If a proper excusal causes me to miss three (3) or more musters on days with four (4) scheduled musters or five (5) scheduled musters; that day will not count as a day of restriction. If I am SIQ, I may be excused from restriction muster(s) and tours with a valid SIQ chit, though this day (or days) will not count as a day of restriction.  If I miss a muster without a proper excusal I will be placed in the conduct system and charged with offense code 07.07. _____
(initial)

_____
(Signature of Midshipman)

**Main Office**, make this midshipman a restriction card and place them on the 0800 Report.

G-1

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

From: _____                    Date: _____
      (OOW, AOOW, MOOW, AMOOW)
To:    Conduct Officer

Midshipman _____ has received a properly annotated restriction
card and is aware that his/her restriction begins at the very next muster at _____.
                                        (Time)


            _____
            (OOW, AOOW, MOOW, AMOOW)


            _____
            (Printed Name and Rank)

**SEND THIS ACKNOWLEDGMENT OF RESTRICTION TO THE CONDUCT OFFICE IMMEDIATELY**

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

## TAB H - RESTRICTION CARD

RESTRICTION MUSTER CARD FOR _____, _____, _____
                                          NAME                 ALPHA        CO

_____ DAYS OF RESTRICTION AWARDED ON _____

*When marking days of credit start with "1" on the first day upon which a restriction muster is attended and count up.

| | MON | TUE | WED | THUR | FRI | SAT | SUN | MON | TUE | WED | THURS | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | | | | | | | |
| 0630 | | | | | | | | | | | | | | |
| 1300 | | | | | | | | | | | | | | |
| 1630 | | | | | | | | | | | | | | |
| 1900 | | | | | | | | | | | | | | |
| 2230 | | | | | | | | | | | | | | |
| CREDIT | | | | | | | | | | | | | | |

| | MON | TUE | WED | THUR | FRI | SAT | SUN | MON | TUE | WED | THURS | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | | | | | | | |
| 0630 | | | | | | | | | | | | | | |
| 1300 | | | | | | | | | | | | | | |
| 1630 | | | | | | | | | | | | | | |
| 1900 | | | | | | | | | | | | | | |
| 2230 | | | | | | | | | | | | | | |
| CREDIT | | | | | | | | | | | | | | |

| | MON | TUE | WED | THUR | FRI | SAT | SUN | MON | TUE | WED | THURS | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | | | | | | | |
| 0630 | | | | | | | | | | | | | | |
| 1300 | | | | | | | | | | | | | | |
| 1630 | | | | | | | | | | | | | | |
| 1900 | | | | | | | | | | | | | | |
| 2230 | | | | | | | | | | | | | | |
| CREDIT | | | | | | | | | | | | | | |

| | MON | TUE | WED | THUR | FRI | SAT | SUN | MON | TUE | WED | THURS | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | | | | | | | |
| 0630 | | | | | | | | | | | | | | |
| 1300 | | | | | | | | | | | | | | |
| 1630 | | | | | | | | | | | | | | |
| 1900 | | | | | | | | | | | | | | |
| 2230 | | | | | | | | | | | | | | |
| CREDIT | | | | | | | | | | | | | | |

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

|  | MON | TUE | WED | THUR | FRI | SAT | SUN | MON | TUE | WED | THURS | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 0630 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 1300 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 1630 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 1900 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 2230 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| CREDIT |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

H-2

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**TAB I - SAMPLE CONDUCT PROBATION LETTER**

1610
DD Mmm YY

From: Commandant of Midshipmen, U.S. Naval Academy
To:      Midshipman **(First Name, Middle Initial, Last Name, U.S. Navy, Alpha Number)**

Subj:   DISPOSITION OF CONDUCT CASE **#XXXXXX**

Ref:    (a) COMDTMIDNINST 1610.2J
          (b) COMDTMIDNINST 5400.6 (series)
          (c) COMDTMIDNINST 5354.2

1.  On **DD Month YYYY**, you were found guilty of committing a Major-level/6K-level conduct offense by the Deputy Commandant/your Battalion Officer.  After reviewing the facts of that case, I have decided to place you on conduct probation in addition to the sanctions awarded during your adjudication.  You are hereby given the opportunity to prove that you have the character and dedication necessary to complete Naval Academy requirements and become a commissioned officer in the naval service.

2.  Pursuant to reference (a), you are retained in the Brigade of Midshipmen in a probationary status.  The terms of your probation are as follows:

    a.  You will be on conduct probation until **DD Month YYYY**.

    b.  You are assigned conduct remediation, pursuant to reference (a). **(When applicable)**

    c.  Per reference (b), you are ineligible for weekend overnight liberty until **DD Month YYYY**.

    d.  You shall not commit any Major-level conduct offenses or any combination of Minor-level conduct offenses which result in cumulative demerits exceeding your class threshold for unsatisfactory conduct, per reference (a) (91 demerits for 4/C, 81 demerits for 3/C, and 71 demerits for 1/C and 2/C).

***The sanctions that follow shall be specific to each individual and their conduct case. Sanctions/requirements shall be delineated in the adjudication script when their inclusion is desired and may not include all of the below.***

    e.  You shall not represent the Naval Academy in sports or extra-curricular activities, per reference (a), until **DD Month YYYY**.

    f.  To serve as a reminder that you represent the United States Navy, even while on liberty, you shall not rate civilian clothes privileges until **DD Month YYYY**.

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

Subj:   DISPOSITION OF CONDUCT CASE **#XXXXXX**

***For CMEO Dignity and Respect Remediation the following sanction shall be included:***

    g.  You will be on Dignity & Respect Remediation for four months.
***Below are sanctions that may be added for alcohol related conduct offenses.***

    h.  You shall not consume any alcohol until **DD Month YYYY**.

    i.  You shall undergo substance abuse screening through the Brigade DAPA, and you shall successfully complete all recommended treatment.

    j.  You shall work for the Brigade ADEO and actively participate in the Keep What You've Earned for the term of your probation.

3.  (***For CMEO Dignity and Respect remediation the following paragraph will be included***) As stated in paragraph 2.g.  You are assigned Dignity & Respect Remediation for a period of four months.  The requirements of the program are delineated in reference (c).  You shall comply with those requirements, and successfully complete Dignity & Respect Remediation.  Your remediation period begins after your first meeting with your remediator, and should be attended by your Company Officer and Senior Enlisted Leader.

4.  (***For certain alcohol related conduct offenses the following paragraph may be included***) In addition to the terms of your conduct probation, you shall rate 4/C car privileges with respect to maintaining and operating a motor vehicle until you graduate from the Naval Academy.

5.  (***When conduct remediation is assigned the following paragraph will be included***) As stated in paragraph 2.b, you are assigned conduct remediation.  **Rank First Name Middle Initial Last Name, U.S. Navy/Marine Corps** will be your Remediator.  Your remediation must be successfully completed.  Your assigned Remediator will ultimately determine your suitability to receive a commission in the United States Navy.  Your remediation period begins after your first meeting with your Remediator and ends **DD Month YYYY**.  Rank First Name Middle Initial Last Name, U.S. Navy/Marine Corps will submit a final report of conduct remediation to me on **DD Month YYYY** (same date conduct probation ends) that will inform me if you have successfully completed remediation or not.

6.  Violation of the terms of your conduct probation, to include failing to successfully complete conduct remediation (when applicable), may immediately result in a recommendation to the Superintendent that you be separated from the Naval Academy.  You may be removed from conduct probation by successfully completing the probation period without violating the terms of your probation.

7.  The purpose of conduct probation is to impress upon you the importance of accountability, dedication to service, commitment to excellence and exemplary standards of conduct both on and off duty, in personal behavior, and in relations with others in the civilian and military

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

communities.  From this point on you must adhere to the highest standards of personal conduct required of midshipmen at the Naval Academy.  I may review your progress at any point during your probation to ensure you are actively participating in and are benefitting from the training. You have been given a second chance to prove to yourself, to your fellow midshipmen, and to your chain of command, that you have a renewed dedication to our high standards.


COMMANDANT OF MIDSHIPMEN


Copy to:
Battalion Officer
Company Officer
Conduct Officer
Performance Jacket
CMEO
ADEO
Conduct Remediator


**Acknowledgement:**

I have read the above notification and acknowledge service of this document.


_____        _____
**Full Name of Accused MIDN**                              Date
MIDN            USN


_____        _____
Witness *(Company Officer or SEL)*                     Date
Print Witness Name:
Print Witness Rank, Service:

I-3

Ex. H

COMDTMIDNINST 1610.2K
27 Jul 2020

**TAB J - SAMPLE FINAL REPORT OF CONDUCT REMEDIATION**

DD Mmm YY

From:  **(CONDUCT REMEDIATOR - RANK, FULL NAME, U.S. SERVICE)**
To:  Commandant of Midshipmen
Via:  (1) Company Officer
      (2) Battalion Officer
      (3) Conduct Officer
      (4) Deputy Commandant of Midshipmen

Subj:  FINAL REPORT OF CONDUCT REMEDIATION FOR MIDSHIPMAN **(FIRST NAME, MIDDLE INITIAL, LAST NAME, U.S. Navy, ALPHA NUMBER)**

Ref:   (a) **REMEDIATOR ASSIGNMENT LETTER** of **(DATE)**
       (b) **CONDUCT PROBATION LETTER** of **(DATE)**

Encl:  (1) Required Essay
       (2) Midshipman Development Plan and POA&M

Encl:  (1) Required Essay (if assigned by Remediator)

1.  Per reference (a), this letter provides a review of Midshipman **(LAST NAME)**'s commissionability as observed in the Conduct Remediation Program.  Reference (b) assigned Midshipman **(LAST NAME)** to the Conduct Remediation Program.

2.  One goal of the Conduct Remediation Program was to have Midshipman **(LAST NAME)** reflect upon **his/her** experience in not meeting the conduct standards of the Brigade and to recognize the central role strict adherence to professional standards play in the profession of arms.  As a means to accomplish this goal, Midshipman **(LAST NAME)** was required to engage in discussions, establish a set of personal goals, and write an essay (if assigned).

   a.  Use this paragraph to report on the discussions of the remediation program.  For example, "The basis of our discussions were drawn from **(TEXTS AND READINGS).** These discussions focused on (CENTRAL THEMES OF REMEDIATION).  Midshipman **(LAST NAME)** was required to read selected articles prior to our meetings.  In these sessions **(HE/SHE)** was tasked to discuss **(HIS/HER)** understanding of the ideas posited in the readings.  During these meetings, I challenged **(HIM/HER)** to examine **(HIS/HER)** experience in violating regulations."

   b.  DISCUSSION OF ESSAY TOPIC AND QUALITY OF WRITING (if assigned).

J-1

Ex. H

3.  **RECOMMENDATION per COMDTMIDNINST 1610.2G Chapter 8 Section 8.4.2 Paragraph c.**


**Remediator**

-----------------------------------------------------------------------------------------------------------------------

**SAMPLE FINAL REPORT OF CONDUCT REMEDIATION (CONT'D)**

FIRST ENDORSEMENT

From:  Commandant of Midshipmen
To:      (CONDUCT REMEDIATOR - RANK, FULL NAME, U.S. SERVICE)

1.  Completion of Conduct Remediation decision:

_____ Approved        _____ Disapproved        _____ Modified


[F. M. LASTNAME]

Copy to:
Deputy Commandant of Midshipmen
Conduct Officer
[##] Battalion Officer
[##] Company Officer

Ex. H

COMDTMIDNINST 1610.2J
27 Jul 2020

**TAB K - CONDUCT REMEDIATION EXTENSION REQUEST**

ACTION MEMO

DD Mmm YY

FOR:     COMMANDANT OF MIDSHIPMAN, U.S. NAVAL ACADEMY

FROM:   *YOUR RANK AND NAME GO HERE, USN/USMC, YOUR TITLE GOES HERE*

SUBJ:   CONDUCT REMEDIATION EXTENSION REQUEST

DISCUSSION:  Request permission to extend MIDN *X/C First Name MI Last Name's* conduct remediation from the prescribed end date of *DD April* to *Xxxxday, DD Month.*

BACKGROUND:

   a. MIDN *X/C Last Name* signed his/her conduct probation letter on DD Month, in which he/she was assigned conduct remediation on the DD$^{rd}$ of Month from his/her adjudication with the *Deputy Commandant* on the *DD$^{th}$ of Month*.

   b.  I was assigned as MIDN *X/C Last name's* conduct remediator.

   c.  MIDN Last is doing *fine and has no issues with remediation/or is not*.

   d.  *Continue to explain here why you need an extension*

RECOMMENDATION: That the Commandant of Midshipman approve this extension request by initialing below:

Approve_____ Disapprove_____

Prepared By: *Your rank and name go here, USN/USMC, Your title goes in footer*

Ex. H

COMDTMIDNINST 1610.2J
27 Jul 2020

**TAB L - REPORT OF CONDUCT REMEDIATION EVALUATION ICO {MIDN, ALPHA}**

DD Mmm YY

MEMORANDUM

From:  Company Officer
To:      Commandant of Midshipmen

Subj:   REPORT OF CONDUCT REMEDIATION EVALUATION ICO {MIDN, ALPHA}

Ref:    (a) COMDMIDNINST 1610.2G

1.  What was the primary purpose for the Midshipman's remediation?  Was that purpose achieved?

2.  What are examples of his previous behavior and how has that behavior changed throughout the midshipman's remediation?

3.  Do you believe the midshipman will be a competent officer?

4.  {Midshipman} has {COMPLETED / FAILED / NEEDS EXTENSION} on his remediation


{F. M. LAST NAME}
{RANK    USN/USMC}
{POSITION}


Acknowledgement:

I have read the above memorandum and agree with the Company Officer's Recommendation.  If I disagree I will provide my own statement.


_____
Senior Enlisted Leader                    Date


_____
Battalion Officer                             Date

Ex. H